*Attorney Grievance Commission v. John M. Green*
Misc. Docket AG Nos. 32 & 46, September Term, 2013


**ATTORNEY GRIEVANCE – INDEFINITE SUSPENSION**

COURT OF APPEALS SUSPENDED INDEFINITELY AN ATTORNEY WHO VIOLATED MARYLAND LAWYERS' RULES OF PROFESSIONAL CONDUCT ("MLRPC") 1.4(a)(2)-(3), 1.4(b), 1.5(a), 1.15(a), 1.15(c), 1.15(d), 8.1(b), 8.4(a), AND 8.4(d) IN ONE CASE AND MLRPC 8.1(b) AND 8.4(d) IN A SECOND CASE BY FAILING TO COMMUNICATE THE SCOPE OF HIS REPRESENTATION AND THE AMOUNT OF TIME BILLED TO A CLIENT, FAILING TO DEPOSIT AN UNEARNED RETAINER IN A CLIENT TRUST ACCOUNT OR ESCROW, AND NOT RESPONDING TO THE LAWFUL REQUESTS OF BAR COUNSEL FOR INFORMATION AND A RESPONSE TO THE COMPLAINTS FILED AGAINST HIM.

Circuit Court for Montgomery County

Case Misc. Docket AG Nos. 29034 & 29262
Argued: 12 November 2014

IN THE COURT OF APPEALS OF
MARYLAND

Misc. Docket AG Nos. 32 & 46

September Term, 2013

---

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

JOHN M. GREEN

---

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

---

Opinion by Harrell, J.

---

Filed:  December 22, 2014

The Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel, filed two petitions for disciplinary or remedial action ("PDRA") against John Melvin Green ("Green" or "Respondent"), pursuant to Maryland Rule 16-751, for alleged violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"). We referred both cases to the Honorable Cynthia Callahan of the Circuit Court for Montgomery County to conduct a consolidated evidentiary hearing and file findings of fact and conclusions of law, according to Md. Rule 16-752.

Neither party filed exceptions to Judge Callahan's findings or conclusions. Moreover, Green did not file any opposition to Petitioner's written recommendation for sanction or take the opportunity to argue before us as to sanction.

## I. Judge Callahan's Findings of Fact and Conclusions of Law

Judge Callahan made the following factual findings:

**Procedural History**

Pursuant to an Order of the Court of Appeals dated July 24, 2013, the disciplinary matter docketed in that court as Misc. Docket No. 32, September Term 2013 was transmitted to the Circuit Court for Montgomery County to be heard in accordance with Maryland Rule 16-757. The Clerk of the Circuit Court for Montgomery County docketed the Circuit Court as Case No. 29034-M (hereinafter "the first case").

On August 28, 2013, John M. Green (hereinafter "Respondent") was personally served in the first case. Along with the summons, Respondent was served with the Petition for Disciplinary or Remedial Action ("the first Petition") filed by the Attorney Grievance Commission of Maryland (hereinafter "Petitioner" or "the Commission").

A Status Hearing and Scheduling Conference were set for September 23, 2013. Petitioner's counsel, Raymond A. Hein,

Esq., and Respondent appeared for the September 23rd hearing. By that time, a second disciplinary action had been filed against Respondent in the Court of Appeals (hereinafter "the second case"). Petitioner's counsel and Respondent agreed on the record to consolidate the two disciplinary actions for trial, and a two-day hearing was scheduled for December 16-17, 2013. Pursuant to a Scheduling Order docketed by the Circuit Court on October 10, 2013, the consolidation of the two matters for trial was confirmed.

The joint Scheduling Order pertaining to both cases also included a discovery deadline of November 18, 2013 and set a Settlement Pre-Trial Hearing date of December 2, 2013 at 1:30 p.m. Copies of the Scheduling Order were mailed to Petitioner's counsel and to Respondent. Respondent did not file an Answer with the Circuit Court to either Petition. He also failed to appear for the pretrial hearing on December 2, 2013.

At the Pretrial Hearing, Petitioner's counsel proffered a response from Respondent relating to the first case. The court accepted a copy of that response as an Answer for docketing, which occurred on December 5, 2013. The document accepted is entitled "Defendant's Answer's to Orders." It was received on September 24, 2013 at the Attorney Grievance Commission, although the Certificate of Service (on the second page) says that a copy was "served on [the] 14th day of January 2013" on Glenn M. Grossman, Esquire (Bar Counsel), more than six months before the first case was docketed.

Respondent did not file an Answer to the second Petition.

When the case was called for trial at approximately 9:55 a.m. on December 16, 2013, Respondent was not present, nor did he appear at any time that morning as the matter proceeded. The court received evidence presented by Petitioner in support of the professional misconduct charges set forth below in both petitions. The hearing was concluded on December 16, 2013.

Upon consideration of the averments of the two petitions, the evidence offered by Petitioner on December 16, 2013 and Petitioner's post-hearing submission of proposed findings of fact and conclusions of law, the court makes the following findings

2

of fact and conclusions of law in accordance with Rule 16-757(c).

## Findings of Fact

Respondent was admitted to the Maryland Bar on September 7, 1999. His is also licensed to practice law in the District of Columbia. Respondent does not presently maintain a separate law office but practices out of his home in Montgomery County. His home address is 6905 Muncaster Mill Road, Derwood, Maryland 20855 (hereinafter "the Muncaster Mill Road address").

**The First Case** (Circuit Court Case No. 29034-M)

The court received Petitioner's Request for Admission of Facts and Genuineness of Documents, to which Respondent failed to respond. Pursuant to Md. Rule 2-424(b), the factual matters set forth therein are deemed admitted, and the eleven (11) documents attached thereto are accepted as genuine. Additionally, the court heard testimony from V'Etta C. Ward, the complainant in the first case, and received several additional documentary exhibits in support of the following factual findings.

V'Etta Ward ("Mrs. Ward") was married to James S. Ward ("Mr. Ward") from May, 2006 until Mr. Ward passed away on June 22, 2009. Following her husband's death, Mrs. Ward petitioned to open an estate and obtained letters of administration as personal representative from the Register of Wills for Prince George's County. Mrs. Ward thereafter hired an attorney (Christopher Brown) to assist her with the administration of her husband's estate.

Mrs. Ward testified that owing to problems over personal property between her and Mr. Ward's adult daughter, Angela, she hired Respondent as a second attorney, for the purpose of "keep[ing] the daughter [Angela] from coming in the house and taking things."

Mrs. Ward testified that she met Respondent in November, 2009 through one of her pastors. By check dated November 7, 2009, she paid Respondent $125.00 as a legal consultation fee. On

3

November 12, 2009, Mrs. Ward and Respondent signed a Retainer Agreement for Respondent to provide legal services in connection with "The Recovery of Assets for the Estate of James S. Ward, The Distribution of Requested Property and All Matters related Thereto." The agreement provided for payment of an initial retainer in the amount of $3,500, to be applied toward legal services to be billed by Respondent at a rate of $250.00 per hour. The agreement also provided that Respondent would provide Mrs. Ward with monthly interim invoices on a timely basis and that she would be invoiced a replenishing retainer of $1,250.00 once the advanced sum of $3,500.00 was expended.

On February 4, 2010, Mrs. Ward paid Respondent's initial retainer of $3,500.00 by check. Respondent did not deposit Mrs. Ward's $3,500.00 check into an attorney trust or escrow account. The retainer amount had not yet been fully earned as of the date Respondent received Ms. Ward's payment.

Prior to his receipt of Mrs. Ward's retainer payment, Respondent provided assistance in arranging a date for Angela Ward to come and pick up personal property from the home titled in the name of the late James S. Ward, where Mrs. Ward was still residing. Angela Ward came to the house on January 23, 2010 for that purpose. Respondent was also present.

After January 23, 2010, Respondent continued to visit Mrs. Ward at her home, and they occasionally socialized. Meanwhile, Mrs. Ward sought Respondent's additional legal guidance with regard to abandoning the Fort Washington residential property titled in her late husband's name. The property was encumbered by two mortgages which in total exceeded the market value of the home. Mrs. Ward had no legal ownership interest in the property.

Respondent eventually began looking into the possibility of having Mrs. Ward abandon the real property. In December, 2010, Respondent, who was unfamiliar with the subject matter, arranged a meeting with an estates and trusts lawyer. Respondent's billing statements reveal that he also spent substantial time researching Maryland statutes and case law, as well as "case law in DC and Virginia," before drafting and finalizing a document titled "Petition for Authority to Abandon

4

Real Property Asset." Petitioner introduced evidence establishing that the petition to abandon was filed on February 1, 2011 with the Register of Wills for Prince George's County in the Estate of James S. Ward. On February 17, 2011, the Orphans' Court for Prince George's County approved an Order granting Mrs. Ward's request to abandon the property.

From the time of Mrs. Ward's $3,500.00 retainer payment on February 4, 2010 until August 11, 2011, Respondent did not send Mrs. Ward monthly or other periodic invoices showing services performed on her legal matter. He did not inform Mrs. Ward that her initial retainer was depleted, nor did he request a replenishing retainer from her, in that period. After the filing and granting of the petition to abandon property in February 2011, Respondent provided no additional legal services to Mrs. Ward.

Mrs. Ward testified that she asked Respondent "[a]bout every other month," whether he was going to issue an invoice for legal services. He would tell her not to worry about it, and Mrs. Ward assumed Respondent's billing "never made it to the 3500." Despite her requests, it was not until August 11, 2011 that Respondent presented Mrs. Ward an invoice, titled "Pre-bill Worksheet." Respondent's accompanying letter claimed a balance was due of $7,845.98 for legal fees and expenses, *after* crediting Mrs. Ward's $3500.00 retainer against the total billed charges of $11,345.98. The August 11, 2011 Pre-bill Worksheet was the first and only bill for services Mrs. Ward received from Respondent.

The August 11, 2011 Pre-bill Worksheet generated by Respondent contained itemized listings of services over a period from November 11, 2009 through March 19, 2011. The final two entries purport to summarize cell phone calls between Respondent and Mrs. Ward from December 26, 2009 until March 19, 2011. Respondent utilized an "[a]ssumption that 50% of the [total minutes] was for legal services" and stated that "50% of the 50% or 25% of the total time" was billable. Respondent cumulatively thus billed 6.25 hours (an amount of $1,562.50) for phone calls occurring over a 15-month period.

On August 19, 2011, Mrs. Ward sent a letter to Respondent dated August 19, 2011 in which she disputed his charges and recited Respondent's failure to provide monthly interim invoices

5

in violation of this Retainer Agreement. Mrs. Ward requested a response to her letter "within 7 business days." Respondent did not respond within seven business days or at any time prior to May 29, 2012.

On May 29, 2012, Respondent sent Mrs. Ward a letter acknowledging her letter dated August 19, 2011 and responding to the same. He expressed disagreement with her "conclusions" and demanded payment "in the amount of $7,845 no later than the close of business June 5, 2012." Respondent's letter raised the possibility of a collection action by his attorney if Mrs. Ward failed to comply.

After receiving Respondent's May 29, 2012 payment demand letter, Mrs. Ward filed a grievance against Respondent with the Commission. Bar Counsel received Mrs. Ward's complaint on June 4, 2012.

As of June 2011, Respondent's listed address with the Client Protection Fund of the Bar of Maryland was 9704 Thorncrest Drive, Fort Washington, Maryland 20744 (hereinafter "the Thorncrest Drive address."). Although he had moved from the Thorncrest Drive address more than 30 days prior to June 21, 2012, Respondent failed to notify the Client Protection Fund of his change of address until January 31, 2013.

On January 31, 2013, Respondent provided the Client Protection Fund with a new mailing address of P.O. Box 1444, Rockville, Maryland 20844 (hereinafter the "P.O. Box"). At all times after May 29, 2012, Respondent has maintained the P.O. Box as a valid mailing address he utilizes to receive mail delivered by the United States Postal Service.

On July 3, 2012, August 3, 2012, and October 12, 2012, the office of Bar Counsel re-sent an initial letter requesting a written response to Mrs. Ward's enclosed complaint to Respondent at the P.O. Box. Respondent received Bar Counsel's correspondence but he did not respond.

On November 13, 2012, Commission Investigator Michael Peregoy contacted Respondent by telephone. Respondent provided Mr. Peregoy with the Muncaster Mill Road address as his current residential address. On November 14, 2012, the

office of Bar Counsel sent Respondent a letter addressed to the Muncaster Mill Road address, enclosing copies of all previous correspondence that had been sent to Respondent concerning Mrs. Ward's complaint. The November 14, 2012 letter directed a response by November 30, 2012. Respondent received Bar Counsel's November 14, 2012 correspondence but not respond.

Mrs. Ward has not had any further communication with Respondent since she filed her grievance on June 4, 2012. She has not been sued or contacted by a lawyer acting on Respondent's behalf regarding the balance due claimed by Respondent in his August 11, 2011 letter and bill and in his May 29, 2012 letter.

**The Second Case** (Circuit Court Case No. 2926-M)

The court received Petitioner's Request for Admission of Facts and Genuineness of Documents, to which Respondent failed to respond. Pursuant to Md. Rule 2-424(b), the factual matters set forth therein are deemed admitted, and the documents attached thereto are accepted as genuine. The Court also received additional documents from the family law matter in which Respondent represented Allen Young, Jr., husband of Nicole Jackson-Young, the individual who filed the complaint at issue in the second case. Upon review of said evidence, the court makes the following factual findings.

In November 2012, Nicole Jackson-Young's complaint presented issues relating to Respondent's conduct as counsel for her husband, Allen Young, Jr., at a "Protective Order hearing" on September 13, 2012 and in subsequent "proceedings for an Absolute Divorce and Child Custody" in the Circuit Court for Prince George's County.

On November 27, 2012, the Office of Bar Counsel wrote to Respondent to request his response to Ms. Jackson-Young's complaint. The letter requesting Respondent's written request was mailed separately to both the P.O. Box and the Muncaster Mill Road address. Respondent did not respond.

On January 17, 2013, the Office of Bar Counsel wrote to Respondent at the Muncaster Mill Road address and again

7

requested a response to Ms. Jackson-Young's complaint. Respondent did not respond.

Respondent continued to represent Allen Young, Jr. in the case of Allen Young v. Nicole Young (hereinafter "the Young case"), Case No. CAD12-31079, in the Circuit Court for Prince George's County. Following a scheduling conference on December 11, 2012, the court issued a Scheduling Order in the Young Case that included, *inter alia*, scheduling of a settlement conference on March 20, 2013 and a two day trial on the merits for May 20 and 21, 2013. As counsel for Mr. Young, Respondent received a copy of the Scheduling Order.

At the settlement conference on March 20, 2013, the parties agreed in principle to terms of a settlement, but the case remained scheduled for a disposition hearing on May 20, 2013. On May 20, 2013, Ms. Jackson-Young and her attorney appeared in court as required. Respondent failed to appear with his client. Respondent's failure to appear in court on May 20, 2013 necessitated continuance of the disposition hearing until June 3, 2013. Respondent did appear with his client on that date, following which a Consent Order was entered by the court.

(Minor alterations added.) (Footnotes omitted.)

Based on these findings, Judge Callahan concluded as follows:

**Conclusions of Law**

**A. The first Case**

Petitioner charges Respondent with violating rules 1.1, 1.4(a) (2)-(3) & (b), 1.5(a), 1.15(a), (c) & (d), 8.1(b) and 8.4(a) & (d) of the Maryland Lawyers' Rules of Professional Conduct ("RPC").

**Rule 1.1 Competence**

> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

The Court concludes that Respondent did not provide Mrs. Ward with competent legal representation. Respondent did not possess the requisite legal knowledge and skill to handle the legal matter involving Mrs. Ward's abandonment of the residential real property titled in the name of her late husband. Although Comment 2 to Rule 1.1 contemplates that "[a] lawyer can provide adequate representation in a wholly novel filed through necessary study[,]" Respondent's lack of knowledge in the subject area of the law, coupled with his failure to notify the client on a timely basis that he was charging her a substantial amount in an effort to become familiar with the law, establish a violation of Rule 1.1.

**Rule 1.4 Communication**

> (a) A lawyer shall:
>
> ***
> (2) keep the client reasonably informed about the status of the matter.
>
> (3) promptly comply with reasonable requests for information; and
>
> ***
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit he client to make informed decisions regarding the representation.

The court concludes that Respondent did not keep Mrs. Ward reasonably informed about the status of the matter he was handling and did not promptly comply with her reasonable requests for the information regarding the status of her retainer and his legal fees. He failed to explain the extent of his services periodically to Mrs. Ward in order to permit her to make informed decisions regarding the representation. In fact, he misled her. In particular, Respondent failed to provide timely monthly invoices and to request a replenishing retainer when the client's initial $3,500.00 retainer had been exhausted. This left Mrs. Ward in the dark about the status of the representation. She was understandably surprised and upset when she received Respondent's bill in August 2011, some six months after the conclusion of the representation, demanding payment of twice

9

what she had already been billed. Based upon these facts, the court concludes that Respondent violated Rule 1.4, subsections (a)(2), (a)(3) and (b).

**Rule 1.5 Fees**

> (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount of expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

Under the circumstances discussed above in connection with Rules 1.1 and 1.4, the court concludes that Respondent charged Mrs. Ward an unreasonable amount. Respondent failed to provide the client with timely monthly invoices, and never sought a replenishing retainer throughout the duration of the actual representation despite the terms of his own retainer agreement. Instead, he waited until six months after the

10

conclusion of the representation to charge Mrs. Ward an additional amount that was more than double her initial retainer. Furthermore, his billing of research time to gain familiarity with the law, and his single billing entry for cumulative cell phone call time over a 15 month period represent excessive charge times under the circumstances. The court concludes that Respondent violated Rule 1.5(a) by charging Mrs. Ward an unreasonable fee.

**Rule 1.15 Safekeeping of Property**

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

\*\*\*

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third

person, shall render promptly a full accounting regarding such property.

Respondent did not have Mrs. Ward's informed consent, confirmed in writing, to deposit her initial retainer of $3,500.00 in an account that was not a client trust account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Indeed, his own Retainer Agreement, at paragraph 8, specified that the initial retainer "will be placed in an escrow account to be drawn from as fees, and costs and expenses are incurred." Therefore Respondent violated Rule 1.15, subsections (a) and (c), when he failed to deposit Mrs. Ward's initial retainer in a trust or escrow account for safekeeping upon receiving that payment on February 4, 2010. *Attorney Grievance Commission v. Guida*, 391 Md. 33, 53, 891 A.2d 1085, 1097 (2006) ("[f]unds given in anticipation of future legal services qualify as trust money and, accordingly, are to be deposited in trust accounts separate from the attorney's property, to be removed promptly by the attorney as earned").

Respondent violated Rule 1.15(d) based upon his failure to render promptly a full accounting regarding Mrs. Ward's $3,500.00 retainer in response to her multiple requests for such an accounting during the course of the representation. He also used, or misused, the personal relationship he developed with Mrs. Ward to avoid providing her the information she requested.

**Rule 8.1 Bar Admission and Disciplinary Matters**

> An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> ***
>
> (b) Fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in that matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information protected by Rule 1.6.

As evidenced by his repeated failures to respond to multiple letters from the Office of Bar Counsel seeking a response to Mrs. Ward's complaint, Respondent violated Rule 8.1(b). *See Attorney Grievance Commission v. Fezell*, 361 Md. 234, 760 A.2d 1108, 1116 (2000) and cases cited therein ("an attorney violates Rule 8.1(b) by failing to respond to letters from disciplinary authorities requesting information").

**Rule 8.4 Misconduct**

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the actions of another;

\*\*\*

(d) engage in conduct that is prejudicial to the administration of justice;

By violating the Maryland Lawyers' Rules of Professional conduct as otherwise concluded herein, Respondent engaged in professional misconduct in violation of Rule 8.4(a).

The court concludes that Respondent's treatment of his client, Mrs. Ward, by threatening her with legal proceedings in his May 29, 2012 letter, was conduct prejudicial to the administration of justice in violation of Rule 8.4(d). Respondent failed to provide Mrs. Ward with timely monthly invoices, and then waited until August 11, 2011 to place her on notice of his claimed balance due of almost $8,000.00. He failed to respond to her August 19, 2011 letter disputing his charges until he sent his May 29, 2012 letter, in which he indicated his attorney would pursue collection action if Mrs. Ward did not pay the amount claimed. Such conduct, in its totality, was prejudicial to the administration of justice.

Respondent's failure to respect the lawful authority of the Bar Counsel to request a response to Mrs. Ward's complaint also violated Rule 8.4(d). Respondent ignored all of Bar Counsel's letters and never provided any information to assist Bar Counsel

13

in reviewing Mrs. Ward's grievance. The court concludes that this conduct also was prejudicial to the administration of justice.

**B. The Second Case (Circuit Court Case No. 29262-M)**

In the second case, Petitioner charges Respondent with violating Rules 8.1(b) and 8.4(d) of the RPC. The texts of those rules are included in the court's Conclusions of Law section regarding the first case.

As in the first case, the court concludes that Respondent's failure to respond to Bar Counsel's letters concerning the complaint of Nicole Jackson-Young violated Rule 8.1(b), and was prejudicial to the administration of justice, therefore also violating Rule 8.4(d).

(Minor alterations added.) (Footnotes omitted.)

As noted earlier, no exceptions were filed to Judge Callahan's findings of facts or conclusions of law. Petitioner recommends that Green be suspended indefinitely.

## II.    Analysis

"The Court of Appeals has 'original and complete jurisdiction over attorney discipline proceedings in Maryland.'" *Attorney Grievance Comm'n v. Harmon*, 433 Md. 612, 623, 72 A.3d 555, 562 (2013) (quoting *Attorney Grievance Comm'n v. Penn*, 431 Md. 320, 333-34, 65 A.3d 125, 133 (2013)). "'[W]e generally will accept the hearing judge's findings of fact, unless those findings are clearly erroneous.'" *Harmon*, 433 Md. at 612, 72 A.3d at 562 (quoting *Attorney Grievance Comm'n v. Tanko*, 408 Md. 404, 418, 969 A.2d 1010, 1019 (2009)). When no exceptions are filed (as was the case here), we may treat the hearing judge's findings of fact as established for purposes of our independent review of the judge's conclusions of law and, where appropriate, determination of the appropriate sanction. Md. Rule 16-759(b)(2)(a). We accept the facts

14

as found by Judge Callahan as they were not clearly erroneous based on our review of the record.

We do not afford the hearing judge's conclusions of law the deference that we do her fact-finding. Pursuant to Md. Rule 16-759(b)(1), we review her legal conclusions without deference. *Harmon*, 433 Md. at 612, 72 A.3d at 562.

### A. Respondent's Violations of the MLRPC in the Ward Case

Petitioner accused Green of violating MLRPC 1.1, 1.4(a)(2)-(3), 1.4(b), 1.5(a), 1.15(a), 1.15(c), 1.15(d), 8.1(b), 8.4(a), 8.4(d), and Maryland Rule 16-607 in its PDRA related to Green's representation of Mrs. Ward. Judge Callahan concluded that Green violated all of the MLRPC sections charged by Petitioner. Petitioner withdrew the Rule 16-607 charge at the hearing. We agree with Judge Callahan's conclusions, except with regard to MLRPC 1.1.

#### 1. MLRPC 1.1

Although MLRPC 1.1 requires a lawyer to represent competently his or her clients, the lawyer need not have relevant experience or the requisite competence at the outset of representation if competence is obtained subsequently through research and preparation. *See* MLRPC 1.1 cmts. 2, 4. With this understanding, we perceive Green's representation of Mrs. Ward to have been competent.

Green represented Mrs. Ward on two distinct matters: 1) arranging for the distribution of personal property over which Mrs. Ward and her late husband's adult daughter were in dispute; and, 2) abandoning the Fort Washington property owned individually by her late husband. In the first matter, we can find no indication in the

15

record that Green lacked the requisite legal knowledge or skill for that undertaking. Moreover, the outcome was satisfactory to the client. With regard to the abandonment of Mrs. Ward's late husband's residential property, although Green was unfamiliar with the specific legal principles and process at the outset, after consultation with a trusts and estates attorney and some legal research, he was able to file a petition to abandon that was accepted and acted upon favorably by the Orphans' Court for Prince George's County. Thus, the representation was competent and effective.

The hearing judge pointed to the lack of communication with the client about the substantial amount of time that Respondent billed Mrs. Ward in an effort to become familiar with the abandonment process as demonstrating the incompetence of Respondent's representation. Although a lack of communication by an attorney with his or her client in violation of MLRPC 1.4 is sometimes also a violation of MLRPC 1.1, it is not so in every case. *Attorney Grievance Comm'n v. Kreamer*, 387 Md. 503, 532, 876 A.2d 79, 96 (2005). In this case, Green's lack of proper client communication violated MLRPC 1.4 and 1.5 (as described below), but such misconduct did not affect the quality or effectiveness of his representation and attainment of his client's goals.

Similarly, mismanagement of client trust funds, under certain circumstances, may amount also to a violation of MLRPC 1.1. We have found client trust account mismanagement to violate MLRPC 1.1 primarily when payments made to clients or on their behalf are delayed unduly. *See Attorney Grievance Comm'n v. Mungin*, 439 Md. 290, 306, 96 A.3d 122, 130-31 (2014) (holding that failure to disburse funds to third party medical providers and maintain adequate balances in his client trust account

violated MLRPC 1.1); *Attorney Grievance Comm'n v. Moeller*, 427 Md. 66, 73, 46 A.3d 407, 411 (2012) (holding that "failure to collect and maintain sufficient monies in his trust account to pay the recordation tax associated with a property settlement" violated MLRPC 1.1); *Attorney Grievance Comm'n v. Agiliga*, 422 Md. 613, 616-17, 622, 31 A.3d 103, 105, 108 (2011)  (holding that failure to maintain records, pay third party medical providers with settlement proceeds, and maintain an escrow account to shield client funds from garnishment from personal financial difficulties is a violation of MLRPC 1.1); *Attorney Grievance Comm'n v. Maignan*, 390 Md. 287, 296-97, 888 A.2d 344, 349 (2005) (holding that "failure to maintain settlement proceeds in a proper client trust account demonstrates incompetence under [MLRPC] 1.1"). Not every mismanagement of client trust monies, however, violates MLRPC 1.1. *See, e.g.*, *Attorney Grievance Comm'n v. Weiers*, __ Md. __ (2014) (No. 10, September Term, 2013 (filed 22 October 2014) (slip op. at 9-11) (holding that commingling client funds with earned fees did not violate MLRPC 1.1, under the circumstances of that case).

There is no indication that Green's failure to deposit Mrs. Ward's retainer into a client trust account or his inadequate communication with her affected the quality of his representation or frustrated attainment of his client's goals in the present case. Green acted adequately and competently on Mrs. Ward's behalf despite his other failures. Therefore, we are not persuaded, by clear and convincing evidence, that Green violated MLRPC 1.1.

17

2. MLRPC 1.4(a)(2)-(3) and (b)

MLRPC 1.4 requires that lawyers communicate adequately with their clients and keep their clients informed about the progress of the representation. Reasonable communication is necessary to allow the client to participate in decision-making over the course of the representation.

Green communicated frequently with Mrs. Ward. In his so-called bill, Green claims to have spent twenty-five hours on the telephone with her.[1] It appears, however, that these attempts at communication were largely noise without much signal. Despite the time spent together on the telephone, Mrs. Ward was not made aware timely that her initial $3,500.00 retainer had been depleted until she was billed finally for it six months after the representation was concluded, despite her requests for agreed upon monthly invoices. Mrs. Ward did not know the significant amount of time that Green was spending on her matters. Green's failure to provide the invoices, request timely the agreed upon replenishing retainer, or inform her of the amount of time he was expending on her representation did not provide Mrs. Ward with the information required to make informed decisions regarding continuance of the representation. We agree with Judge Callahan's conclusion that Respondent violated MLRPC 1.4(a)(2)-(3) and (b).

---

[1] In his "Pre-bill Worksheet," Green claims to have billed Mrs. Ward only for a quarter of the time he spent on the telephone, i.e., 6.25 hours.

18

3. <u>MLRPC 1.5(a)</u>

MLRPC 1.5 prohibits lawyers from charging unreasonable fees. The Rule provides a list of non-exclusive factors to consider when determining the reasonableness of fees.

Although the total fee of $11,345.98 seems to us high relative to the complexity of the matters for which Green was engaged and the results obtained, we need not conclude that the total fee sought to be collected was unreasonable in order to conclude that Green violated MLRPC 1.5. Green's failure to provide the agreed monthly invoices (as he was reminded to do by Mrs. Ward), his failure to request the replenishing retainer, and his "bill" sent more than six months after the conclusion of the representation were unreasonable. It was also unreasonable, under the circumstances, for Green to bill the total amount of time he spent allegedly researching the law regarding how to abandon the residential property of Mrs. Ward's late husband. Finally, the single billing entry for telephone calls over a fifteen month period was unreasonable. We agree with Judge Callahan that Green violated MLRPC 1.5(a).

4. <u>MLRPC 1.15(a), (c), and (d)</u>

MLRPC 1.15 concerns the safekeeping of client property. "Funds given in anticipation of future legal services qualify as trust money and, accordingly, are to be deposited in trust accounts separate from the attorney's property, to be removed promptly by the attorney as earned." *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 53, 891 A.2d 1085, 1097 (2006).

Green violated subsections (a) and (c) of MLRPC 1.15 when he failed to deposit Mrs. Ward's retainer into a client trust or escrow account. Green violated subsection (d) of MLRPC 1.15 by failing to provide the monthly invoices that Mrs. Ward requested repeatedly. Thus, we agree with Judge Callahan's conclusions that Green violated MLRPC 1.15(a), (c), and (d).

5. MLRPC 8.1(b)

MLRPC 8.1(b) prohibits, among other things, lawyers from failing knowingly to respond to the lawful demand for information from a disciplinary authority, i.e., Bar Counsel. Green failed to respond to multiple letters from the Office of Bar Counsel seeking a response to Mrs. Ward's complaint. "This court has a long history of holding that an attorney violates [MLRPC] 8.1(b) by failing to respond to the letters from disciplinary authorities requesting information." *Fezell*, 361 Md. at 249, 760 A.2d at 1116 (citing several of our cases in support). We agree with Judge Callahan's conclusion that Green violated MLRPC 8.1(b).

6. MLRPC 8.4 (a) and (d)

MLRPC 8.4(a) provides that violations of the MLRPC constitute misconduct. MLRPC 8.4(d) states that it is professional misconduct to engage in conduct that prejudices the administration of justice. Green violated both subsections of the Rule. By violating the other MLRPC provisions discussed previously in this opinion, Green violated also MLRPC 8.4(a). His failure to respond to Petitioner's lawful requests for information and a response to Mrs. Ward's complaint was prejudicial to the administration of justice. Failure to comply with the requests of Bar Counsel in a prompt

20

and complete manner violates MLRPC 8.4(d). *Attorney Grievance Comm'n v. Rose*, 383 Md. 385, 392, 859 A.2d 659, 663 (2004). We agree therefore with Judge Callahan's conclusions that Green violated MLRPC 8.4(a) and (d).

Judge Callahan also concluded that Green's threat of legal action against Mrs. Ward to collect the legal fees he claimed she owed was prejudicial to the administration of justice and a violation of MLRPC 8.4(d). We disagree. Threatening collection action of legal fees, even potentially unreasonable fees, does not, by itself, violate MLRPC 8.4(d).

### B. Respondent's Violations of the MLRPC in the Jackson-Young Case

Petitioner accused Respondent of violating MLRPC 8.1(b) and 8.4(d) in its PDRA regarding Ms. Jackson-Young's complaint. Judge Callahan concluded that Green violated both rules. We agree.

The basis for Petitioner's claim arose from Green's failure to answer Bar Counsel's request for a response to Ms. Jackson-Young's complaint. Several letters were sent by Petitioner, and received and ignored by Respondent. This conduct is prejudicial to the administration of justice, a violation of MLRPC 8.4(d), as well as a violation of MLRPC 8.1(b).

### C. Appropriate Sanction

Our cases support suspending indefinitely Green for his violation of MLRPC 1.1, 1.4(a)(2)-(3), 1.4(b), 1.5(a), 1.15(a), 1.15(c), 1.15(d), 8.1(b), 8.4(a), and 8.4(d). In *Attorney Grievance Commission v. Stillwell*, for example, we suspended indefinitely an attorney, with the right to apply for reinstatement in no sooner than 60 days, for lack of

diligence in pursuing a client's matter, failing to keep the client reasonably informed about the status of the representation, and failing to deposit an unearned retainer in a client trust account (MLRPC 1.3, 1.4, and 1.15 respectively). 434 Md. 248, 274, 74 A.3d 728, 743 (2013). Further, failure to cooperate with Bar Counsel (MLRPC 8.1(b)), when combined with other disciplinary violations not involving dishonesty, has resulted often in an indefinite suspension. *See, e.g.*, *Harmon*, 433 Md. at 623-24, 629, 72 A.3d at 562, 566 (imposing an indefinite suspension with right to apply for reinstatement in no fewer than six months for violations of MLRPC 1.15 and 8.1(b)); *Attorney Grievance Comm'n v. Alston*, 428 Md. 650, 678, 53 A.3d 1142, 1158 (2012) (imposing an indefinite suspension for violations of MLRPC 1.3, 1.4, 1.15, 1.16, 8.1(b), and 8.4(d)); *Attorney Grievance Comm'n v. Lee*, 393 Md. 546, 566, 903 A.2d 895, 907 (2006) (imposing an indefinite suspension for violations of MLRPC 1.3, 1.4, 1.16, 3.2, 8.1(b), and 8.4(c)); *Attorney Grievance Comm'n v. Kovacic*, 389 Md. 233, 240, 884 A.2d 673, 677 (2005) (imposing an indefinite suspension for violations of MLRPC 1.3, 1.4, and 8.1(b)); *Rose*, 383 Md. at 392, 859 A.2d at 663 (2004) (imposing an indefinite suspension with right to apply for reinstatement after six months for violations of MLRPC 1.15(a), 8.1(b), and 8.4(d)). Thus, indefinite suspension is appropriate as the starting-point sanction in this case and, as it turns out, the ending point.

It is appropriate sometimes to state a minimum period of time that an attorney who has been suspended indefinitely must wait before he or she may apply for reinstatement to the Bar. *Attorney Grievance Comm'n v. Litman*, __ Md. __, __ A.3d __ (2014) (No. 81, September Term, 2013) (filed October 2014) (slip op. at 16). Where there is no

22

evidence in the record bearing on the likelihood that the offending attorney may not repeat the misconduct, however, we have refrained from specifying a minimum duration for an indefinite suspension. *See Kovacic*, 389 Md. at 240, 884 A.2d at 677. Because there is nothing in the record plumbing the reasons for Green's misconduct or the likelihood that recidivism is not a concern, due to his multiple refusals to cooperate with Bar Counsel, an open-ended indefinite suspension is appropriate. We note also in this regard that no mitigation was found by Judge Callahan. Thus, there is no basis from which we could divine an appropriate minimum "sit-out" period.

## III.    Conclusion

Respondent, John Melvin Green, violated MLRPC 1.4(a)(2)-(3), 1.4(b), 1.5(a), 1.15(a), 1.15(c), 1.15(d), 8.1(b), 8.4(a), and 8.4(d) in Misc. Docket AG No. 32 and MLRCP 8.1(b) and 8.4(d) in Misc. Docket AG No. 46. For this misconduct, we suspend indefinitely Respondent from the practice of law in Maryland.

> **IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST JOHN MELVIN GREEN.**