*645 Dissenting Opinion by ADKINS, J., which McDONALD, J., joins.
Most respectfully, I dissent from the Majority opinion for the reasons set forth below.
I. Billing Practices
The Majority uses overly broad strokes in addressing a lawyer’s ethical obligations regarding the timing of bills. We should apply a more nuanced, contextual approach to this aspect of private law practice. The Majority says:
Judge Bair found that on two occasions Rand requested, and received, $1,000 to replenish the retainer, but did not provide Ms. Klein with a statement for services, as necessitated by his retainer agreement. In addition, Judge Bair found that Ms. Klein requested, several times, that Rand send her an invoice. We recently stated in Attorney Grievance Commission v. Green, 441 Md. 80, 91-92, 105 A.3d 500, 507-08 (2014), that a failure to provide invoices, as agreed upon in the attorney’s fee agreement, violated Rules 1.4(a) and 1.5(a). In the present case, Rand’s failure to provide an invoice both when requested by Ms. Klein and when he requested replenishment of the retainer, in derogation of the terms of his fee agreement, violated Rules 1.4(a) and 1.5(a).
Maj. Op. at 628-29, 128 A.3d at 136 (emphasis added). I agree that Respondent violated Maryland Rules of Professional Conduct (“Rules”) 1.4(a) and 1.5(a) when he delayed for a year sending his client a bill, especially since she requested one multiple times. But I am concerned about implications of the Majority’s broad-stroke language about the obligation to bill. Lawyers have an obligation to send reasonable bills. See Rule 1.5(a) (“A lawyer shall not make an agreement for, charge, or collect an unreasonable fee.... ”). When working on an hourly basis, this means a lawyer must take the time to assess whether the hours expended were reasonable before sending a bill. Thus, generating the bill is not simply pressing a button on a computer or cell phone. Time records are easily *646 obtainable, but the decision as to how much is reasonable to bill can require careful study of those records.
There are times when the press of substantive work will prevent a lawyer from taking the time to generate a bill. For a lawyer who does trial work, this is especially difficult— trying a case (including preparation) is so intense, all-consuming, and time-sensitive that it demands a lawyer’s full attention. In finding a violation of Rules 1.4(a) and 1.5(a), in part for failing to provide an invoice “when requested,” Maj. Op. at 628-29, 128 A.3d at 135-36, the Majority sends the following signal: whenever requested by a client, lawyers must drop the substance and pressing work they are doing and immediately assess how much of the hours billed to a file should actually be included on an invoice. Indeed, the Majority’s opinion can be construed to mean that a lawyer must do this even if the client is unreasonable in the number and timing of her requests.
This is a misplaced priority and unfair to our profession. Society is fortunate that there are conscientious lawyers who care deeply about pursuing the best interests of their clients. If we tell those lawyers that they can be branded as unethical because they do not “promptly” send bills to their clients, or ask for more money to go into their “evergreen” accounts, we signal that lawyers should focus on money rather than pursuing their clients’ goals. Not all lawyers send monthly bills, and this can be perfectly ethical.
It is entirely too easy for us who do not practice to sit here and pronounce that lawyers just must do it all—and do it on time—or they will be disciplined. Perhaps doing so is, realistically, much harder than we think it is. All in all, we should act with restraint when imposing discipline for a failure to send a bill promptly on demand or even a monthly bill. Each case should be evaluated based on the reasonable expectations of the lawyer and client, considering the fee agreement, and other circumstances of the representation.
II. Sanction
The Majority has imposed our second-most severe sanction in a case arising out of one matter, in which Respondent was *647 neither dishonest with his client (or the Court), nor incompetent. He did not abandon his client. Indeed, he accomplished something meaningful—securing a favorable result in an EEOC proceeding. He did not mishandle funds in his trust account.
The hearing judge found that Respondent “did communicate frequently [with his client] during the course of the representation,” but failed to communicate his decision not to file an addendum to the complaint (relating to events happening after the filing of the complaint) that he and his client had worked on together. See Maj. Op. at 606-09, 128 A.3d at 122-24 (setting forth the judge’s conclusions of law regarding Rule 1.4). Respondent, however, included the new material in a later responsive filing. Bar Counsel made no showing that this prejudiced the client’s case with the EEOC. I cannot see this as a significant failure when the information the client sought to convey in the Addendum was fully set forth in the responsive pleading. What’s more, Respondent’s action did not cause any evident harm to the client—indeed, she prevailed with the EEOC.
As I indicated, Respondent violated Rule 1.4 when, despite his client’s requests, he refrained from sending a bill for an entire year. There was no finding, however, that his fees were excessive. Respondent was partially but not fully cooperative with Bar Counsel, a violation of Rule 8.1(b), but we should not ignore that, in two earlier disciplinary cases, Bar Counsel’s charges against Respondent were ultimately dismissed. This may explain Respondent’s aggressiveness in defending himself against these charges-improperly telling Bar Counsel that the favorable EEOC decision included an award of attorney’s fees. Moreover, when his client fired him, his assertion that he had the right to retain his files pertaining to the EEOC claim was facially correct under Md.Code (1989, 2010 RepLVol.), § 10-501 of the Business Occupations and Professions Article, and he did not have the benefit of the Majority’s after-the-fact determination that he forfeited that right.
*648 The numerical sum of violations does not always reflect the seriousness of the misconduct. These violations, all arising from a single representation in which the first stage of his client’s discrimination claim was accomplished, do not add up to an indefinite suspension in my book. A 60-day flat suspension would be more appropriate.
Judge McDONALD has authorized me to state that he joins in the views expressed in this dissenting opinion.