*Attorney Grievance Commission of Maryland v. Gary Morgan Brooks,* Misc. Docket AG No. 71, September Term, 2019. Opinion by Biran, J.

**Attorney Misconduct – Discipline – Reprimand**

Respondent, Gary Morgan Brooks, violated Maryland Attorneys' Rules of Professional Conduct 19-301.1, 19-301.3, 19-301.4(a)(2) and (3), 19-301.15(a) and (c), 19-308.4(a) and (d), and Maryland Rule 19-407(a)(3). These violations stemmed from Respondent's errors in administering a small estate and his failure to properly manage his attorney trust account. The appropriate sanction for Respondent's violations is a reprimand.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 71

September Term, 2019

---

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

GARY MORGAN BROOKS

---

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

---

Opinion by Biran, J.

---

Filed: August 27, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Respondent Gary Morgan Brooks operates a solo law practice in Baltimore City. On February 25, 2020, the Attorney Grievance Commission of Maryland (the "Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Mr. Brooks, in connection with his administration of a small estate. Bar Counsel alleged that Mr. Brooks violated Maryland Attorneys' Rules of Professional Conduct (the "MARPC"[1]) 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5 (fees), 1.7 (conflict of interest), 1.15 (safekeeping property), 8.4 (misconduct), and Maryland Rule 19-407 (attorney trust account record-keeping).

Under Maryland Rule 19-722(a), we designated the Honorable Kendra Y. Ausby of the Circuit Court for Baltimore City to conduct an evidentiary hearing in accordance with Maryland Rule 19-727 concerning the alleged violations and to issue findings of fact and conclusions of law. The evidentiary hearing was conducted via remote electronic participation under Maryland Rule 2-803 on December 10 and 11, 2020.

On February 9, 2021, the hearing judge filed with this Court an opinion containing her findings of fact and conclusions of law, as well as findings concerning aggravating and mitigating circumstances. The hearing judge concluded that Mr. Brooks violated multiple provisions of the MARPC as well as Maryland Rule 19-407. Bar Counsel and Mr. Brooks subsequently filed exceptions to the hearing judge's findings of fact and conclusions of

---

[1] The Maryland Attorneys' Rules of Professional Conduct are codified as Maryland Rule 19-300.1 *et seq*. In an effort to enhance readability, we use abbreviated references to the prior codifications of these rules, which are consistent with the ABA Model Rules on which they are based (*e.g.,* Maryland Rule 19-301.1 will be referred to as Rule 1.1). *See* ABA Compendium of Professional Responsibility Rules and Standards (Am. Bar Ass'n 2017).

law. On May 10, 2021, we heard oral argument regarding those exceptions and the parties' recommendations as to an appropriate sanction.

For the reasons stated below, we conclude that Mr. Brooks violated MARPC 1.1, 1.3, 1.4(a)(2) and (3), 1.15(a) and (c), 8.4(a) and (d), and Maryland Rule 19-407(a)(3), and determine that a reprimand is the appropriate sanction.

## I

## Background

### A. The Hearing Judge's Findings of Fact

We summarize here the hearing judge's findings of fact.

*Background*

Mr. Brooks was admitted to the Maryland Bar on June 17, 1992. Since 2004, he has maintained a solo practice in Baltimore City with a focus on bankruptcy, personal injury, and estates and trusts.

*Mr. Brooks's Legal Work for Errol Ellis*

In February 2013, Errol Ellis retained Mr. Brooks to draft a Last Will and Testament as well as a deed transferring title in his home. The deed provided that Mr. Ellis's wife, Tangy Ellis, would have a life estate in the property with the remainder to go to Mr. Ellis's adult children, Torria Ellis-Dugar and Jermaine Ellis, as joint tenants with the right of survivorship. Because of the strained relationship between Mr. Ellis's children and Mrs. Ellis, their stepmother, Mr. Ellis did not want any of the three to be the Personal Representative of his Estate; instead, the 2013 will named Mr. Brooks as the Personal Representative.

In June 2016, Mr. Ellis retained Mr. Brooks to draft a new will that provided for specific bequests to Mrs. Ellis, Ms. Ellis-Dugar, and Jermaine Ellis, with the remainder of the Estate to be divided among them. Because the relationship between Mrs. Ellis and the children remained acrimonious, Mr. Ellis again designated Mr. Brooks to serve as the Personal Representative of his Estate.

*The Estate of Errol Ellis*

Mr. Ellis (hereinafter "decedent") died on September 5, 2017, survived by Mrs. Ellis, Ms. Ellis-Dugar, and Jermaine Ellis (collectively, the "beneficiaries"). The beneficiaries met with Mr. Brooks on September 11, 2017. Mr. Brooks provided them with copies of decedent's life insurance policies and advised them of decedent's wish for the proceeds of a Midland National life insurance policy to pay the balance on the home mortgage and for the proceeds of another insurance policy to pay his funeral expenses. The assets of decedent's estate (the "Estate") included a 2002 Ford Escape bequeathed to Mrs. Ellis; a 1977 Chevrolet Corvette bequeathed to Ms. Ellis-Dugar; a 2014 Chrysler 300 bequeathed to Jermaine Ellis; $95.04 in an M&T Bank account; and some jewelry. The insurance policies and the home, which had already been transferred under the 2013 deed, were not assets of the Estate.

On September 14, 2017, Mr. Brooks emailed the beneficiaries, attaching a copy of decedent's 2016 will (the "Will"). In that email, Mr. Brooks advised the beneficiaries of the retainer he would require to open and administer the Estate: $2,000 for legal fees and $500 for ministerial fees for a total of $2,500. On September 18, 2017, Mr. Brooks met with Ms. Ellis-Dugar and Jermaine Ellis; Mrs. Ellis participated by phone. At that time,

Ms. Ellis-Dugar signed a retainer agreement on behalf of the beneficiaries to hire Mr. Brooks to "represent and administer" the Estate. The retainer agreement stated that Mr. Brooks would provide the following services:

> Completing the preliminary forms, including, but not limited to, Petition for Probate, Schedule(s); List of Interested Persons; coordination of creditors and expense payments; and coordination of estate assets, etc. Administering the Estate including, but not limited to, advising the Personal Representative; coordinating proper notice to creditors and payment of claims; completing any necessary reports; and closing the Estate.

The beneficiaries agreed to divide the cost of the $2,500 retainer. On September 18, Ms. Ellis-Dugar provided Mr. Brooks with a $2,500 check with the understanding that she was voluntarily covering the cost of Jermaine Ellis's portion of the retainer and would be reimbursed by Mrs. Ellis for Mrs. Ellis's portion. Mr. Brooks deposited the $2,500 check into his operating account. On September 26, 2017, Mrs. Ellis paid Mr. Brooks her portion of the retainer fee, which he deposited into his operating account. On October 7, 2017, Mr. Brooks issued Ms. Ellis-Dugar an $833.33 check from his operating account as reimbursement for Mrs. Ellis's portion of the retainer. Mr. Brooks did not have the beneficiaries' informed consent, confirmed in writing, to deposit these funds into an account other than an attorney trust account.

On or about October 5, 2017, Mr. Brooks filed a Small Estate Petition for Administration and Schedule B with the Register of Wills for Baltimore County. Mr. Brooks signed the documents as the Estate's attorney and as its Personal Representative. The hearing judge found that the Schedule B ("Small Estate – Assets and Debts of the Decedent"), as filed by Mr. Brooks, contained multiple errors:

(1) [Mr. Brooks] listed the 2014 Chrysler 300 valued at $13,747.00; however, the vehicle was encumbered by a loan and had a fair market value of only $311.95; (2) [Mr. Brooks] reported the allowable funeral expenses as $15,096.38; however, [Md. Code Ann., Est. & Trusts (ET)] § 8-106(c)(2) provides that "[i]n no event may the allowance exceed $15,000 unless the estate of the decedent is solvent and a special order of [the] court has been obtained[;]" (3) [Mr. Brooks] failed to provide an amount for statutory family allowances. ET § 3-201(a) provides: "[t]he surviving spouse is entitled to receive an allowance of $10,000 for personal use[;]" and (4) [Mr. Brooks] also claimed expenses of administration in the amount of $2,109.00, which included his attorneys fees; however, expenses of administration are limited to the probate bond, fees associated with notice of the estate, and expenses associated with upkeep of the estate assets or transfer of the estate assets, and do not include attorneys fees.

(footnotes omitted). The Register of Wills corrected the Schedule B by reducing allowable funeral expenses to $15,000, reducing expenses of administration to $150, and writing in $10,000 for statutory family allowances.

On October 6, 2017, the Register of Wills issued an Order admitting the Will for probate and appointing Mr. Brooks as the Personal Representative. The Estate's legal notice was published in The Daily Record on October 12, 2017. Under ET § 8-103(a)(1), any claim against the Estate was required to be filed within six months of decedent's death, *i.e.*, by March 5, 2018. Discover Bank ("Discover") made a timely claim against the Estate.[2] Under ET § 8-106(b), Mr. Brooks was required to pay the funeral expenses of decedent by April 6, 2018, but failed to do so.

Including the Discover claim, the Estate had a deficiency of $16,603.04. Under ET § 8-105(a), if an estate's assets are insufficient to pay all claims in full, the personal

---

[2] While not specified in the hearing judge's findings of fact, the evidence introduced at the hearing demonstrated that Discover made a claim against the Estate in the amount of $4,589.68 on November 3, 2017.

representative is required to make payments as enumerated in the statute. In accordance with ET § 8-105(a), Mr. Brooks was obligated to disburse the Estate's assets as follows: (1) $150 to the Register of Wills; (2) $181.35 for costs and expenses of administration; and (3) all remaining assets to be disbursed to Ms. Ellis-Dugar for reimbursement of funeral expenses. Mr. Brooks failed to comply with ET § 8-105(a).

On November 27, 2017, Mr. Brooks emailed the beneficiaries and informed them of an additional debt to the Municipal Employees Credit Union ("MECU").[3] He incorrectly advised the beneficiaries that the MECU debt and the Discover claim against the Estate would have to be paid by the Estate, and that the Estate would need to sell the vehicles to do so. To the contrary, the Estate was not required to pay the MECU debt, because MECU had not made a claim against the Estate as required by ET § 8-103(a). Further, due to the Estate's deficiency, the unsecured Discover claim had the lowest priority for payment under ET § 8-105(a), and even with the sale of the vehicles, the Estate would not likely have sufficient funds to pay the Discover claim.

Mrs. Ellis purchased the Ford Escape from the Estate at the fair market value of $461. Jermaine Ellis purchased the Chrysler 300 by paying off the loan on the vehicle and making a $311.95 cash payment to the Estate for its fair market value. Mr. Brooks

---

[3] Although the hearing judge did not provide details concerning the nature and amount of the MECU debt in her findings of fact, the evidence introduced at the hearing showed that, at the time of his death, decedent had a MECU checking account with a $490.53 balance and a MECU line of credit with a $2,156.07 balance owing. Mr. Brooks explained to the beneficiaries in his November 27, 2017 email that MECU would be applying the amount in the checking account to offset the debt, thereby reducing the line of credit balance to $1,665.54.

transferred the Corvette's title to Ms. Ellis-Dugar without any payment being made to the Estate. Mr. Brooks deposited the $461 payment for the Ford Escape into the Estate's account at Harbor Bank and the $311.95 cash payment for the Chrysler 300 into his operating account.

Decedent's Midland National life insurance policy named M&T Bank as the primary beneficiary for the purpose of paying off the mortgage, and decedent's children as secondary beneficiaries to receive any funds remaining after the payoff. Upon decedent's death and after a September 17, 2017 meeting with the beneficiaries, Mr. Brooks obtained a payoff statement from M&T Bank, sent it to Midland National, and directed decedent's children to complete their claims for any surplus funds. In attempting to facilitate the payoff of the mortgage, Mr. Brooks encountered the following problems that slowed the process: (1) a typographical error in the policy naming "MeT" Bank instead of "M&T" bank; (2) a dispute arose over M&T Bank's payoff statement, in which Midland National refused to accept the statement and M&T Bank refused to alter it; and (3) there was a period of time when Midland National would only speak to the beneficiaries and not Mr. Brooks, and M&T Bank would only speak to Mr. Brooks and not the beneficiaries. Subsequently, Mr. Brooks advised decedent's children to contact Midland National in their capacity as secondary beneficiaries. He also initiated calls with M&T Bank to authorize the mortgagee to communicate with the beneficiaries, which he confirmed in writing.

Mrs. Ellis did not make the mortgage payments on the home until the mortgage was paid off, despite her agreement that she would make such payments. This resulted in the bank issuing a foreclosure notice. Mr. Brooks engaged in further communications with the

bank, the bank's foreclosure law firm, and the beneficiaries. Ultimately, the house did not go into foreclosure and, in September 2018, the proceeds from the Midland National policy paid off the mortgage.

Under the fee agreement, Mr. Brooks charged the beneficiaries $175 per hour to represent and administer the Estate. Beginning on November 27, 2017, Mr. Brooks advised the beneficiaries on three occasions that he would provide them with an accounting of his fees for services provided. Mr. Brooks did not provide the promised accounting for several months. On April 11, 2018, Ms. Ellis-Dugar filed a complaint against Mr. Brooks with Bar Counsel.[4]

It was not until May 6, 2018, that Mr. Brooks provided the beneficiaries an invoice, dated May 4, 2018, that listed $5,206.25 in fees and $331.35 in costs for the period of September 2017 through May 2018. The beneficiaries had already provided Mr. Brooks with $500 for costs, by way of the initial retainer. Mr. Brooks applied the remaining $168.65 that had been reserved for costs toward his attorney's fees, without authorization from the beneficiaries. After crediting each beneficiary for one-third of the $95.04 in the M&T Bank account and crediting Mrs. Ellis and Jermaine Ellis for their vehicle payments, Mr. Brooks divided the remaining balance owed to him ($3,037.60) among the three beneficiaries, with Ms. Ellis-Dugar owing $980.85, Jermaine Ellis owing $668.90, and Mrs. Ellis owing $519.85.

---

[4] In her Bar complaint, which was admitted as an exhibit at the evidentiary hearing, Ms. Ellis-Dugar alleged that Mr. Brooks performed his duties deficiently in several respects, including by failing to provide any monthly invoices for his services, despite his agreement to do so.

On May 14, 2018, Mr. Brooks filed a Supplemental Schedule B with the Register of Wills that included the $95.04 from the M&T Bank account as an asset of the Estate. Once again, he listed funeral expenses in excess of what ET § 8-106(c)(2) allows. He did not attach his May 4, 2018 invoice to support his claim of $5,537.60 for expenses of administration of the Estate, nor did he petition the Orphans' Court for Baltimore County to request payment of attorney's fees or otherwise notify the Orphans' Court that he sought payment of attorney's fees.

On August 2, 2018, Mr. Brooks wrote an $800 check from the Estate account, payable to himself, for attorney's fees. On or about October 1, 2018, Mr. Brooks wrote a $60 check from the Estate account to himself for attorney's fees. Mr. Brooks did not seek or obtain the approval of the Orphans' Court to withdraw these funds to pay his attorney's fees, nor did the beneficiaries consent to the $860 in withdrawals from the Estate for attorney's fees.

At a hearing on April 11, 2019 in the Orphans' Court, Mr. Brooks consented to his removal as the Personal Representative.[5] On September 18, 2020, Mr. Brooks sent a check in the amount of $1,036.76 to the Substitute Personal Representative to repay the withdrawals he had made from the Estate to pay his attorney's fees, with interest.

---

[5] As discussed above, on April 11, 2018, Ms. Ellis-Dugar filed a complaint with Bar Counsel concerning Mr. Brooks. The record reflects that, on December 18, 2018, Ms. Ellis-Dugar and Jermaine Ellis, through a new attorney, filed a Petition to Reopen the Estate, for the purpose of disclosing and distributing all personal property in accordance with section six of the Will. The hearing on April 11, 2019, at which Mr. Brooks consented to his removal as the Personal Representative, was held on the Petition to Reopen the Estate.

*Complaint of Ms. Ellis-Dugar*

Following the filing of Ms. Ellis-Dugar's complaint with Bar Counsel in April 2018, there was correspondence between Bar Counsel and Mr. Brooks concerning Ms. Ellis-Dugar's allegations. In letters dated January 8, 2019 and January 25, 2019, Bar Counsel requested that Mr. Brooks provide copies of his client matter records and client ledger that related to any payments made by the beneficiaries. Mr. Brooks did not produce any such records, acknowledging that he had failed to maintain client matter records and ledgers as required by Maryland Rule 19-407(a)(3).

At the evidentiary hearing, Bar Counsel presented the expert testimony of Michael Stelmack. The hearing judge wrote in her findings that Mr. Stelmack

> opined that notwithstanding ET § 5-604, which provides that in small estates, the personal representative "is not entitled to receive commissions for the performance of the duties of a personal representative," an attorney serving as personal representative *can* seek payment of attorney's fees when the work performed is legal versus ministerial, subject to ET § 7-602. Regarding such fees in small estates, Mr. Stelmack opined that the statute provides little guidance – highlighting the fact that unlike large estates, for which the law expressly requires the filing of a petition for attorney's fees, the "small estate subsection of the statutes does not [have] a particular reference to petitions for counsel fees." While it is rare that an attorney would petition for fees in small estates, Mr. Stelmack opined that a petition would not necessarily be needed for fees paid by the beneficiaries, without the use of estate funds. Ultimately, Mr. Stelmack opined that [Mr. Brooks] should have petitioned the court for attorney's fees and should not have applied any funds from the Estate towards his attorney's fees without leave of court.

## B. The Hearing Judge's Finding Regarding Remedial Action

Maryland Rule 19-727(d)(2)[6] requires the hearing judge to make "findings as to any remedial action taken by the attorney" under review. In her written opinion, the hearing judge found that Mr. Brooks took the following remedial action:

> After reviewing Mr. Stelmack's August 28, 2020, legal opinion, [Mr. Brooks] acknowledged his errors and refunded the attorney's fees to the Estate. Admitting that he erred in treating the Estate's legal expenses as expenses of estate administration, [Mr. Brooks] issued a check payable to the Estate of Errol A. Ellis in the amount of $1,036.76. This sum represented a refund of $860.00 in attorney's fees, plus $109.70 interest at the legal rate of 6% from August 2, 2018 through September 16, 2020, and a refund of $60.00 in attorney's fees, plus $7.06 interest at the legal rate of 6% from October 1, 2018 through September 16, 2020.[7]

## C. The Hearing Judge's Conclusions of Law

Based on her findings of fact, the hearing judge concluded by clear and convincing evidence that Mr. Brooks violated Rules 1.1, 1.3, 1.4, 1.15, 8.4, and Maryland Rule 19-

---

[6] Maryland Rule 19-727 was amended on July 9, 2021 to rearrange the sections by re-lettering the current section (d) as section (e) and the current section (e) as section (d), effectively switching places, along with other minor amendments. The amendments do not become effective until October 1, 2021. *See* Maryland Standing Committee on Rules of Practice and Procedure, Rules Order on the 207th Report (Jul. 9, 2021), available at https://perma.cc/Z7C9-K9KN.

[7] Mr. Brooks apparently made an overpayment to the Estate when he provided $1,036.76 to the Substitute Personal Representative on September 18, 2020. As discussed above, Mr. Brooks's first withdrawal of Estate funds to pay his attorney's fees was in the amount of $800, not $860. In other words, in his September 2020 repayment, Mr. Brooks double-counted the $60 second withdrawal of Estate funds and paid interest on the $60 twice.

11

407. The hearing judge did not find a violation of Rule 1.5.[8] We summarize the hearing judge's conclusions of law below.

*Rule 1.1 – Competence*

Rule 1.1 states that an attorney must "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The hearing judge concluded that Mr. Brooks violated Rule 1.1 as a result of the numerous errors he made in administering the Estate, "including but not limited to errors contained in documents filed with the [Orphans'] Court, errors in applying the statutory order of priority of claims against the Estate, errors in depositing client funds, errors in withdrawing funds, and overall failure to keep client records, as required by Maryland Rule 19-407; all despite his years of experience in estate administration." Because the record disclosed multiple mistakes in administering the Estate, as opposed to an isolated incident of neglect, the hearing judge concluded that Mr. Brooks violated Rule 1.1.

*Rule 1.3 – Diligence*

Rule 1.3 requires attorneys to "act with reasonable diligence and promptness in representing a client." The hearing judge found that Mr. Brooks violated Rule 1.3 by "repeatedly fail[ing] to provide an accounting for earned fees. The undisputed evidence reflects that beginning on November 27, 2017, [Mr. Brooks] made several assurances that

---

[8] Bar Counsel withdrew its claim that Mr. Brooks violated Rule 1.7 (conflict of interest) after the evidentiary hearing.

he would provide the beneficiaries with an accounting for earned fees, but failed to do so until May 6, 2018, nearly six (6) months after his initial promise to provide the invoice."

*Rule 1.4 – Communication*

The hearing judge concluded that Mr. Brooks violated Rule 1.4, which concerns attorney-client communication.[9] First, the hearing judge found a violation of Rule 1.4(a)(1) as a result of Mr. Brooks's failure to advise the beneficiaries that he was required to seek and obtain approval of the Orphans' Court before the Estate could pay his attorney's fees. In addition, the hearing judge determined that Mr. Brooks violated Rule 1.4(a)(2) and (3) by failing to timely provide an accounting of his time to the beneficiaries.

*Rule 1.5 – Fees*

Rule 1.5(a) provides that an attorney may not "make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." The hearing judge concluded that Bar Counsel failed to prove a violation of Rule 1.5. The hearing judge based this conclusion on Mr. Stelmack's testimony that nothing prohibited Mr. Brooks from

---

[9] Rule 1.4(a) provides, in pertinent part:

(a) An attorney shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
>
> (2) keep the client reasonably informed about the status of the matter; [and]
>
> (3) promptly comply with reasonable requests for information[.]

serving as both the Personal Representative and attorney for the Estate. Further, Mr.

Stelmack did not testify that the fees Mr. Brooks charged were unreasonable.

*Rule 1.15 – Safekeeping Property*

Rule 1.15 provides, in pertinent part:

(a) An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.

….

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred.

The hearing judge concluded that Mr. Brooks violated Rule 1.15

when he failed to deposit and maintain the $2,500.00 retainer paid by Ms. Ellis-Dugar in his attorney trust account until earned; when he failed to deposit the $833.33 paid by Mrs. Ellis, into his attorney trust account; when he failed to obtain informed consent, confirmed in writing, to place the funds in his operating account; when he failed to deposit the $311.95 cash payment (received from [Jermaine] Ellis as payment for the Chrysler 300) into the Estate account; when he applied $168.65, to his attorney's fees without seeking or obtaining approval from the beneficiaries; and when he withdrew $860.00 from the Estate account to pay his attorney's fees without seeking or obtaining court approval, or consent from the beneficiaries.

*Rule 8.4 – Misconduct*

Under Rule 8.4(a), "[i]t is professional misconduct for an attorney to … violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another[.]" The hearing judge concluded that Mr. Brooks violated Rule 8.4(a) because he violated other MARPC provisions.

In the section of her opinion concerning Rule 8.4, the hearing judge did not discuss Rule 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). However, in the section of her opinion addressing mitigating factors, the hearing judge found that Mr. Brooks "has not made any false statements to the Office of Bar Counsel in the course of the investigation or proceedings, has not made any misrepresentations in connection with the acts, omissions or transactions alleged in the Petition, has not committed any act of fraud in connection with the acts, omissions or transactions alleged in the Petition, and has not engaged in conduct involving fraud or misrepresentation." We construe this passage of the hearing judge's opinion as concluding that Bar Counsel failed to prove a violation of Rule 8.4(c) (in addition to finding the mitigating factor of absence of a dishonest or selfish motive).

The hearing judge did not express any conclusion in her opinion as to whether Mr. Brooks violated Rule 8.4(d) (conduct prejudicial to the administration of justice).

15

*Maryland Rule 19-407 – Attorney Trust Account Record-Keeping*

Maryland Rule 19-407 provides, in pertinent part:

(a) Creation of Records. The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

….

(3) Client Matter Records. A record for each client matter in which the attorney receives funds in trust, as follows:

> (A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of the funds remaining in the account in connection with the matter;

> (B) an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client.

The hearing judge concluded that Mr. Brooks violated Rule 19-407(a)(3) by failing to maintain client matter records and client ledgers as required by the rule.

### D. The Hearing Judge's Findings as to Aggravating and Mitigating Factors

*Aggravating Factors*

The hearing judge found two aggravating factors: prior discipline and substantial experience in the practice of law. The hearing judge concluded that Mr. Brooks received prior discipline on June 20, 2014, when the Commission reprimanded him for violating Rule 1.15 and former Maryland Rules 16-607 (commingling of funds) and 16-609

16

(improper use of and having a negative balance in attorney trust accounts).[10] In addition, the hearing judge found that, having been a member of the Maryland Bar since 1992 and practicing law full-time since 2004 with estate administration as a primary area of practice, Mr. Brooks has substantial experience in the practice of law.

*Mitigating Factors*

In the section of her opinion concerning mitigating factors, the hearing judge did not explicitly state which of the recognized mitigating factors she found to be present in Mr. Brooks's case.[11] Rather, the hearing judge made various findings concerning facts and circumstances that she found to be mitigating:

> [Mr. Brooks] has fully cooperated with the Office of Bar Counsel in the course of its investigation and in these proceedings. [Mr. Brooks] has not taken any action to obstruct the investigation or proceedings, has not made any false statements to the Office of Bar Counsel in the course of the investigation or proceedings, has not made any misrepresentations in connection with the acts, omissions or transactions alleged in the Petition, has not committed any act of fraud in connection with the acts, omissions or

---

[10] Effective July l, 2016, former Maryland Rule 16-607 was renumbered as Maryland Rule 19-408, and former Maryland Rule 16-609 was renumbered as Maryland Rule 19-410.

[11] We have previously listed relevant mitigating factors as including:

absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 209 (2014) (citation omitted).

transactions alleged in the Petition, and has not engaged in conduct involving fraud or misrepresentation.

[Mr. Brooks] has an exceptionally good reputation in the legal community and in the community at large. He is recognized for his long-standing commitment to improving the quality of life in Baltimore's neighborhoods, through his many years of work as a neighborhood development coordinator, the formation of a citywide youth basketball coalition, and co-founding the Bluford Drew Jemison STEM Academy. As an alumnus of UMBC, [Mr. Brooks] plays a key role in fundraising for the school's Second-Generation scholarship fund and supporting the students in general, through mentoring. President Hrabowski describes him as an "extraordinarily active" alumnus and considers [Mr. Brooks] to be of "impeccable character."

In the legal community, [Mr. Brooks] has handled *pro bono* cases for the Maryland Volunteer Lawyer's Service for more than a decade. Lewyn Scott Garrett, the Chief Judge of the Orphans' Court for Baltimore City describes [him] as "a very good attorney" who is "honest" and "a really good guy who cares about people." He noted that once [Mr. Brooks] understood the errors he had made in the underlying case, "he owned up to it and tried to correct it." Retired Chief Judge Wanda Keyes Heard described [Mr. Brooks] as "trustworthy and honest," … and praised [him] for his genuine concern for the welfare of his clients. Attorney James Wiggins described [Mr. Brooks] as a man who "believes in people," "sees the good in people and … wants to help them as best he can." Having referred several clients to him over the years, Attorney Wiggins noted that he has "never received any negative feedback from them. And those who have talked to me have been very, very positive." Ultimately, Mr. Wiggins characterized [Mr. Brooks] as "very honest and trustworthy... a good person...who will go beyond what others might do … to help people as best he can. … the kind of person who's going to do whatever he can to help serve the community and help to try to make others better." Attorney Wiggins also noted that [Mr. Brooks] expressed remorse in recounting his errors, which prompted these proceedings.

Additionally, the Court received affidavits from Ralph E. Moore, Jr., Benjamin F. DuBose, Jr., and Mark Sissman – all of whom attested to [Mr. Brooks's] humility, sincerity, and the extraordinary efforts he has expended on behalf of his clients and his fellow citizens.

Based on these findings and on the hearing judge's separate findings discussed above concerning Mr. Brooks's refund to the Estate of the attorney's fees plus interest as "remedial action," we conclude that the hearing judge found five mitigating factors to be present: (1) absence of a dishonest or selfish motive; (2) timely good faith efforts to make restitution or to rectify consequences of misconduct; (3) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (4) character or reputation; and (5) remorse.

## II

## Standard of Review

"This Court has original and complete jurisdiction in an attorney disciplinary proceeding and conducts an independent review of the record. The hearing judge's findings of fact are left undisturbed unless those findings are clearly erroneous. We review the hearing judge's conclusions of law without deference." *Attorney Grievance Comm'n v. Hoerauf*, 469 Md. 179, 207-08 (2020) (cleaned up).

## III

## Discussion

Either party may file "exceptions to the findings and conclusions of the hearing judge[.]" Md. Rule 19-728(b). Here, both Bar Counsel and Mr. Brooks filed exceptions to the hearing judge's findings of fact and conclusions of law. We address each exception in turn.

## A. Exceptions to the Hearing Judge's Factual Findings

To the extent the parties have not excepted to the hearing judge's findings of fact, we treat those findings as established. Md. Rule 19-741(b)(2)(A). When a party excepts to a factual finding, we conduct an independent review of the record to ensure that the finding is supported by clear and convincing evidence. *Attorney Grievance Comm'n v. Miller*, 467 Md. 176, 194 (2020); *Hodes*, 441 Md. at 168. Clear and convincing evidence "does not call for 'unanswerable' or 'conclusive' evidence. The quality of proof, to be clear and convincing, has also been said to be somewhere between the rule in ordinary civil cases and the requirement of criminal procedure – that is, it must be more than a mere preponderance but not beyond a reasonable doubt." *Hodes*, 441 Md. at 168 n.15. We have also explained that, in our review of the record, we generally accept the hearing judge's findings of fact unless they are shown to be clearly erroneous. *Id.* at 168-69. "A hearing judge's factual finding is not clearly erroneous if there is any competent evidence to support it." *Id.* at 169 (quoting *Attorney Grievance Comm'n v. McDonald*, 437 Md. 1, 16 (2014)). A hearing judge "maintains a great deal of discretion in determining which evidence to rely upon." *Miller*, 467 Md. at 195; *see also Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 717 (2014) ("Consistent with the standard of review for factual findings ... we have iterated that the judge 'may elect to pick and choose which evidence to rely upon.'") (quoting *Attorney Grievance Comm'n v. Kreamer,* 404 Md. 282, 311 (2008)).

Bar Counsel has not taken exception to any of the hearing judge's factual findings. Mr. Brooks notes exceptions to the hearing judge's findings that: (1) Mr. Brooks

incorrectly advised the beneficiaries regarding low priority claims or debts; (2) Mr. Brooks, in his capacity as Personal Representative, failed to pay for decedent's funeral expenses; and (3) Mr. Brooks made errors on Schedule B, specifically, that he incorrectly listed the market value of the three vehicles and the amount of funeral expenses and failed to list the statutory family allowance.

1. Mr. Brooks's Advice Regarding Payment of the Estate's Debts

Mr. Brooks first excepts to the hearing judge's determination that he incorrectly advised the beneficiaries regarding debts to Discover and MECU. We overrule this exception.

The hearing judge found that, on November 27, 2017, Mr. Brooks incorrectly advised the beneficiaries that selling the three vehicles was necessary to satisfy the Discover claim and the MECU debt. We agree with the hearing judge that this advice was incorrect. First, under ET § 8-103,[12] it was not yet clear whether the MECU debt would

---

[12] ET § 8-103(a) provides:

Except as otherwise expressly provided by statute with respect to claims of the United States or the State, a claim against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, is forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within the earlier of the following dates:

(1) 6 months after the date of the decedent's death; or

(2) 2 months after the personal representative mails or otherwise delivers to the creditor a copy of a notice in the form required by § 7-103 of this article or other written notice, notifying the creditor that

21

even potentially have to be paid, because MECU had not yet made a claim against the Estate.[13] Second, due to the Estate's deficiency, Discover's unsecured claim had the lowest priority for payment under ET § 8-105(a), and Mr. Brooks knew or should have known that the Estate likely would not pay that claim.[14] Third, the sale of the vehicles, rather than going toward the MECU and Discover claims, would have been for the purpose of paying

---

the claim will be barred unless the creditor presents the claim within 2 months after the mailing or other delivery of the notice.

[13] MECU subsequently did not make a claim against the Estate.

[14] ET § 8-105(a) provides that:

If the applicable assets of the estate are insufficient to pay all claims in full, the personal representative shall make payment in the following order:

(1) Fees due to the register;
(2) Costs and expenses of administration;
(3) Funeral expenses as provided in § 8-106 of this subtitle;
(4) Compensation of personal representatives as provided in § 7-601 of this article, for legal services as provided in § 7-602 of this article, and commissions of licensed real estate brokers;
(5) Family allowance as provided in § 3-201 of this article;
(6) Taxes due by the decedent;
(7) Reasonable medical, hospital, and nursing expenses of the last illness of the decedent;
(8) Rent payable by the decedent for not more than three months in arrears;
(9) Wages, salaries, or commission for services performed for the decedent within three months prior to death of the decedent;
(10) Assistance paid under the Public Assistance to Adults Program, as provided in § 5-407(d) of the Human Services Article; and
(11) All other claims.

the then-existing, statutorily prioritized obligations under ET § 8-105(a): fees due to the Register of Wills, costs and expenses of administration, and funeral expenses.

Mr. Brooks argues that he did not give faulty advice by informing the beneficiaries of the low priority debts. As Mr. Brooks points out, Bar Counsel's expert, Mr. Stelmack, testified that it was "good practice to at least make [the beneficiaries] aware of what the potential claims are." Further, Mr. Brooks notes that the Estate ultimately did not pay either the MECU or Discover debts.

While we agree with Mr. Brooks that it was not improper for him to advise the beneficiaries of the existence of both existing and potential claims, we discern no clear error in the hearing judge's finding that Mr. Brooks incorrectly advised the beneficiaries in his November 27, 2017 email that the Estate would need to pay the MECU debt and Discover claim, and that the vehicles would need to be sold to pay those debts.

2. Payment of Funeral Expenses

Mr. Brooks next excepts to the hearing judge's finding that the Estate failed to pay decedent's funeral expenses within six months of Mr. Brooks's appointment as Personal Representative. *See* ET § 8-106(b) ("Subject to the priorities contained in § 8-105 of this subtitle, the personal representative shall pay the funeral expenses of the decedent within six months of the first appointment of a personal representative."). Ms. Ellis-Dugar paid the funeral expenses, using the proceeds of an insurance policy decedent had obtained for that purpose. Mr. Brooks argues that the hearing judge erred because payment of the funeral expenses is not required when the Estate lacks the funds to pay those expenses or to reimburse a funeral expense creditor for the expenses. Mr. Brooks further argues that,

notwithstanding the Estate's lack of funds, he effectively reimbursed Ms. Ellis-Dugar for the funeral expenses to the extent possible by transferring title to the only asset in the Estate with any real value, the Corvette, without requiring payment from Ms. Ellis-Dugar. We also overrule this exception.

The Estate had a deficiency in the amount of $16,603.04. In accordance with ET § 8-105(a), the Estate assets were required to be disbursed as follows: (1) $150 to the Register of Wills; (2) $181.35 in Estate costs and expenses (fees for publication, nominal bond, and mail); and (3) all remaining assets to be disbursed to Ms. Ellis-Dugar to reimburse her for the payment of funeral expenses.

As Bar Counsel notes, Mr. Brooks advances his argument regarding "effective" reimbursement by transferring title to the Corvette to Ms. Ellis-Dugar for the first time in his exceptions. Contrary to his exception, Mr. Brooks testified at the hearing that the Estate did not pay the funeral expenses because of insufficient funds. Ms. Ellis-Dugar also testified that Mr. Brooks did not reimburse her for funeral expenses due to insufficient funds. Nothing in the record or testimony at the evidentiary hearing suggests that the transfer of the title to the Corvette was for the purpose of reimbursing Ms. Ellis-Dugar for the funeral expense, rather than giving effect to decedent's bequest of the Corvette to Ms. Ellis-Dugar. Although it appears that Ms. Ellis-Dugar was not financially harmed due to the availability of insurance proceeds to pay the funeral expenses, the fact remains that Mr. Brooks failed to pay the funeral expenses.

3. Errors in Schedule B

Mr. Brooks also excepts to the hearing judge's finding that he made errors in completing the initial Schedule B submission filed on October 6, 2017. The hearing judge found that Mr. Brooks made the following errors:

(1) [Mr. Brooks] listed the 2014 Chrysler 300 valued at $13,747.00; however, the vehicle was encumbered by a loan and had a fair market value of only $311.95;

(2) [Mr. Brooks] reported the allowable funeral expenses as $15,096.38; however, ET § 8-106(c)(2) provides that "[i]n no event may the allowance exceed $15,000 unless the estate of the decedent is solvent and a special order of [the] court has been obtained[;]"

(3) [Mr. Brooks] failed to provide an amount for statutory family allowances[; however,] ET §3-201(a) provides: "[t]he surviving spouse is entitled to receive an allowance of $10,000 for personal use[;]" and

(4) [Mr. Brooks] also claimed expenses of administration in the amount of $2,109.00, which included his attorneys fees; however, expenses of administration are limited to the probate bond, fees associated with notice of the estate, and expenses associated with upkeep of the estate assets or transfer of the estate assets, and do not include attorneys fees. Accordingly, the expenses claimed by [Mr. Brooks] improperly included his attorney's fees.

(footnotes omitted). The Register of Wills manually corrected the following errors on the original Schedule B by crossing out the incorrect amount and writing in or inserting the correct amount: funeral expenses (amended to $15,000); family allowance (inserting $10,000); and expenses of administration (amended to $150).

Mr. Brooks argues that he "properly listed the fair market values of each of the Estate's three vehicles, accurately recited the funeral expense and did not err in connection with the family allowance." However, he concedes that he erroneously listed his attorney's

25

fees as part of the expenses of administration claimed on Schedule B and on the supplement filed on May 14, 2018,[15] in violation of ET § 8-105(a)(4).

> The Small Estate Petition for Administration states the following:
>
> NOTE: For the purpose of computing whether an estate qualifies as a small estate, value is determined by the fair market value of property less debts of record secured by the property as of the date of death, to the extent that insurance benefits are not payable to the lien holder or secured party for the secured debt. See Code, Estates and Trusts Article, § 5-601(d).

*See* Office of the Register of Wills, "Petition for Administration of a Small Estate," available at https://perma.cc/ER9X-5HKA. Under ET § 5-601(d), Mr. Brooks incorrectly reported the value of the Chrysler 300 on Schedule B, resulting in the Estate being overvalued by $13,222.95. The Chrysler 300 was secured by a lien and its value should have been listed as $311.95, rather than $13,747. Mr. Stelmack testified that "… based on the record that I reviewed, after the sale of the [Chrysler 300], a lien was paid off, and at that time, the value that came to the estate that Mr. Jermaine [Ellis] paid for it, was I think a little over $300."

An estate's value affects the order of priority in which claims are to be paid under ET § 8-105(a). In this matter, the Office of Register of Wills wrote in $10,000 for statutory family allowances on Schedule B – priority five under ET § 8-105(a) – because the Estate's value, which Mr. Brooks inaccurately reported, showed enough funds to cover that allowance. With respect to allowable funeral expenses, the Register of Wills crossed out

---

[15] On the Supplemental Schedule B, Mr. Brooks listed "expenses of administration" as $5,537.60, which was the total of the May 2018 invoice for his attorney's fees eventually provided to the beneficiaries.

$15,096.38 on Schedule B and wrote in $15,000 – the maximum allowed under ET § 8-106, unless the Estate was solvent and a special court order had been obtained – because the Estate's value as inaccurately reported had enough to cover that allowance. In reality, the Estate only had enough funds to cover the Register of Wills fees, expenses of administration, and a portion of the funeral expenses, or priorities one, two, and three under ET § 8-105(a).

Moreover, Mr. Brooks conceded that he improperly included his attorney's fees in the "Expenses of Administration" category not once, but twice. In short, our review of the record reveals competent evidence to support the hearing judge's finding that Mr. Brooks made multiple errors on the Schedule B submissions. Thus, we also overrule this exception.

## B. Conclusions of Law

The hearing judge concluded that Mr. Brooks violated Rules 1.1, 1.3, 1.4(a),[16] 1.15, and 8.4(a). The hearing judge also concluded that Mr. Brooks violated Maryland Rule 19-407. The hearing judge concluded that Mr. Brooks did not violate Rule 1.5.[17] As explained above, we interpret the hearing judge's findings regarding mitigation necessarily also to

---

[16] Bar Counsel charged Mr. Brooks with a violation of Rule 1.4(b), which provides that "[a]n attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The hearing judge did not find a violation of Rule 1.4(b) in her conclusions of law, and Bar Counsel has not excepted on that point. Given the overlap between Rules 1.4(a)(2) and (3) – upon which the hearing judge, in part, based her conclusion that Mr. Brooks violated Rule 1.4 – and Rule 1.4(b), we see no need to consider further whether Mr. Brooks violated Rule 1.4(b).

[17] Bar Counsel has not excepted to this conclusion, and we decline to consider it further.

mean that the hearing judge found no violation of Rule 8.4(c).[18] The hearing judge did not make a finding as to whether Mr. Brooks violated Rule 8.4(d).

*Rule 1.1 – Competence*

An attorney provides competent representation by "applying the appropriate knowledge, skill, thoroughness, and preparation to the client's issues." *Attorney Grievance Comm'n v. Rheinstein*, 466 Md. 648, 709 (2020); *see also Attorney Grievance Comm'n v. Woolery*, 456 Md. 483, 495 (2017) ("An attorney may have adequate knowledge or skill to represent a client, but a failure to apply that knowledge or skill as necessary violates [Rule 1.1]."). While "a single mistake does not necessarily result in a violation of Rule 1.1, and may constitute negligence but not misconduct under the rule," multiple acts of negligence, errors, and omissions in a single case can rise to the level of "cumulative acts of misconduct" to be a violation of Rule 1.1. *Attorney Grievance Comm'n v. Thompson*, 376 Md. 500, 512-13 (2003). "Sound record-keeping is an essential part of competent representation, and an attorney's failure to keep or produce records can itself lead to a violation of [Rule 1.1]." *Attorney Grievance Comm'n v. London*, 427 Md. 328, 345 (2012). Moreover, "[a]n attorney 'demonstrates incompetence, and therefore violates [Rule 1.1,] when he [or she] fails to properly maintain his [or her] client trust account.'" *Attorney Grievance Comm'n v. Frank*, 470 Md. 699, 735 (2020) (quoting *Attorney Grievance Comm'n v. Smith*, 457 Md. 159, 214 (2018)). Further, an attorney's "failure to maintain

---

[18] Bar Counsel has not excepted to the hearing judge's failure to find a violation of Rule 8.4(c). Based upon the hearing judge's findings of fact and our independent review of the record, we conclude that Mr. Brooks did not violate Rule 8.4(c).

[client] funds in a proper trust account demonstrates incompetence." *Attorney Grievance Comm'n v. Smith-Scott*, 469 Md. 281, 337 (2020) (citation omitted).

The hearing judge concluded that Mr. Brooks violated Rule 1.1 as a result of the numerous errors he made in administering the Estate, "including but not limited to errors contained in documents filed with the [Orphans'] Court, errors in applying the statutory order of priority of claims against the Estate, errors in depositing client funds, errors in withdrawing funds, and overall failure to keep client records, as required by Maryland Rule 19-407; all despite his years of experience in estate administration." We agree.

As discussed above, Mr. Brooks made multiple errors when submitting the initial and supplemental Schedule B in the Orphans' Court. In addition, because Mr. Brooks did not use the remaining assets to pay the funeral expense as required by ET § 8-106(b), his subsequent payment of attorney's fees to himself from Estate funds in August and October 2018 violated the statutory order of priority of claims against the Estate under ET § 8-105(a). Further, Mr. Brooks improperly deposited the $2,500 retainer into his operating account instead of his attorney trust account, and he failed to maintain client matter records and client ledgers as required by Maryland Rule 19-407(a)(3). For all of these reasons, we conclude that Mr. Brooks violated Rule 1.1.

*Rule 1.3 – Diligence*

An attorney violates Rule 1.3 by failing to "act with reasonable diligence and promptness in representing a client." This Rule "can be violated by failing to advance the client's cause or endeavor; failing to investigate a client's matter; and repeatedly failing to return phone calls, respond to letters, *or provide an accounting for earned fees*." *Hoerauf,*

29

469 Md. at 210 (quoting *Attorney Grievance Comm'n v. Edwards* 462 Md. 642, 699 (2019)) (emphasis added).

The hearing judge concluded that Mr. Brooks violated Rule 1.3 when he failed to provide the beneficiaries with an accounting of earned fees for approximately six months, despite assuring the beneficiaries on several occasions during that period that he would do so. We agree that this conduct violated Rule 1.3.

*Rule 1.4 – Communication*

Rule 1.4(a) provides, in pertinent part, that an attorney shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter; [and]

(3) promptly comply with reasonable requests for information[.]

This Rule requires that attorneys "communicate with their clients and keep their clients reasonably informed of the status of their case." *Edwards*, 462 Md. at 699. An attorney's repeated failure to provide an accounting of their time and fees may violate Rule 1.4(a). *See Attorney Grievance Comm'n v. Green*, 441 Md. 80, 99 (2014) (holding that attorney violated Rules 1.4(a)(2)-(3) and (b) based on the "failure to provide … invoices, request timely the agreed upon replenishing retainer, or inform [the client] of the amount of time he was expending on her representation[, which] did not provide [the client] with the information required to make informed decisions regarding continuance of the representation"); *see also Attorney Grievance Comm'n v. Rand*, 445 Md. 581, 628-29

(2015) (concluding a Rule 1.4(a) violation occurred where the attorney failed to provide invoices despite repeated requests).

The hearing judge concluded that Mr. Brooks violated Rule 1.4(a)(1) "when he failed to advise the beneficiaries that if the Estate paid his attorney's fees, he was required to seek and obtain court approval." The hearing judge also concluded that Mr. Brooks violated Rules 1.4(a)(2) and (3) "when he failed to timely provide an accounting of his time."

We agree with the hearing judge's conclusion that Mr. Brooks violated Rules 1.4(a)(2) and (3) by failing to provide invoices to the beneficiaries for approximately six months, despite their repeated requests for such accountings and his repeated assurances that he would provide them. A six-month delay in response to a request for an accounting of an attorney's time neither "keep[s] the client reasonably informed about the status of the matter" nor constitutes "promptly comply[ing] with reasonable requests for information" from a client. *See Green*, 441 Md. at 99; *Rand*, 445 Md. at 629.

We do not see a basis to conclude that Mr. Brooks violated Rule 1.4(a)(1) in connection with his withdrawal of $860 in Estate funds to pay a portion of his attorney's fees. Rule 1.4(a)(1) requires that an attorney "inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules." The hearing judge did not explain how Mr. Brooks's actions implicated the beneficiaries' "informed consent," nor have we been able to discern such a connection. Nevertheless, we conclude that Mr. Brooks violated Rule 1.4(a)(2) by failing to notify the beneficiaries that he intended to use $860 in Estate funds to pay his attorney's

31

fees, or to notify them after the withdrawals that he had done so. In the context of this matter – in which the beneficiaries had repeatedly asked Mr. Brooks to account for his time and Ms. Ellis-Dugar had already filed a Bar complaint against Mr. Brooks when he made the withdrawals – Mr. Brooks's failure to notify the beneficiaries concerning his withdrawal of Estate funds to pay his fees constituted a failure to keep the beneficiaries "reasonably informed about the status of the matter."

*Rule 1.15 – Safekeeping Property*

Rule 1.15 provides, in relevant part:

(a) An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.
…

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred.

Rule 1.15(a) requires that an attorney hold "trust money" received from clients in a trust account separate from the attorney's operating account. *See Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 188 (2015) ("Trust money is money an attorney receives from a client in anticipation of performing future services."). A violation of Rule 1.15(c) occurs "when the attorney 'does not deposit trust funds into an attorney trust account and does not

obtain the client's informed consent to do otherwise.'" *Attorney Grievance Comm'n v. Planta*, 467 Md. 319, 352-53 (2020) (quoting *Hamilton*, 444 Md. at 189).

The hearing judge concluded that Mr. Brooks violated Rule 1.15 in several instances, including when he failed to deposit and maintain the $2,500 retainer paid by Ms. Ellis-Dugar in his attorney trust account until earned; when he failed to deposit the $833.33 paid by Mrs. Ellis for her share of the retainer into his attorney trust account; when he failed to obtain informed consent, confirmed in writing, to place these funds in his operating account; when he failed to deposit the $311.95 cash payment from Jermaine Ellis as payment for the Chrysler 300 into the Estate account, which was instead deposited into his operating account; when he applied $168.65 that had been reserved for court costs to his attorney's fees without seeking or obtaining approval from the beneficiaries to do so; and when he withdrew $860 from the Estate account to pay his attorney's fees without seeking or obtaining court approval, or consent from the beneficiaries.

Mr. Brooks has noted an exception relating to the hearing judge's determination concerning the failure to petition the Orphans' Court before withdrawing Estate funds to pay his attorney's fees. Although Mr. Brooks states that he now understands he "should have billed the Legatees for his services separately without looking to estate funds for payment," he notes that Mr. Stelmack testified that the small estates subtitle of the Estates and Trusts Article "doesn't specifically address attorneys fees" and "does not [have] a particular reference to petitions for counsel fees." However, Mr. Stelmack also explained that, if a procedure that applies to estates generally is not altered by a statute in the small estate subtitle, then the general procedure for all types of estates applies in small estates.

33

Mr. Stelmack was referring to ET § 5-607, which is part of the small estates subtitle and states, "[e]xcept to the extent inconsistent with the letter and the spirit of this subtitle, all other provisions of the estates of decedents law shall be applicable to a small estate." Mr. Stelmack opined that, based on this provision, Mr. Brooks was not permitted to use Estate funds to pay for attorney's fees without court approval.

In the administration of an estate, under ET § 7-602(a), "[a]n attorney is entitled to reasonable compensation for legal services rendered by the attorney to the estate or the personal representative or both." An attorney seeks payment of attorney's fees upon "filing of a petition" to the Orphans' Court, which has discretion to grant or deny the petition. *Id.* § 7-602(b). As Mr. Stelmack testified, notwithstanding the prohibition against a personal representative receiving a commission for his services in a small estate, *see* ET § 5-604, and the absence of another statute in the small estates subtitle addressing attorney's fees, an attorney performing legal services for a small estate may seek payment under ET § 7-602 because the small estates subtitle specifically provides that "all other provisions of the estates of decedents law shall be applicable to a small estate." *Id.* § 5-607.

We conclude that, if Mr. Brooks wished to use Estate funds for attorney's fees, he was required to petition the Orphans' Court for leave to do so. It seems clear that, had he so petitioned, that petition would have been denied.[19] Under the priority rules set forth in

---

[19] Mr. Brooks testified that he did not know until September 2020, after he became aware of Mr. Stelmack's expert opinion and consulted with Chief Judge Garrett of the Orphans' Court of Baltimore City, that he needed to petition the Orphans' Court to use Estate funds to pay attorney's fees in a small estate. The hearing judge necessarily credited this testimony, as she found that Mr. Brooks "has not made any misrepresentations in

ET § 8-105(a), because the Estate lacked sufficient assets to fully reimburse Ms. Ellis-Dugar for the funeral expenses, which carried a higher priority than payment for attorney's fees, Mr. Brooks would not have been entitled to use any Estate funds to pay his attorney's fees.

In sum, we conclude that Mr. Brooks violated Rule 1.15(a) and (c).

*Rule 8.4 – Misconduct*

Rule 8.4(a) states that it is "professional misconduct for an attorney to … violate or attempt to violate the [MARPC], knowingly assist or induce another to do so, or do so through the acts of another[.]" Having concluded that Mr. Brooks violated other rules of professional conduct, we conclude that Mr. Brooks violated Rule 8.4(a).

Bar Counsel excepts to the hearing judge's failure to find a violation of Rule 8.4(d). Rule 8.4(d) provides that it is "professional misconduct for an attorney to … engage in conduct that is prejudicial to the administration of justice." "An act prejudicial to the administration of justice is one that 'tends to bring the legal profession into disrepute.'" *Attorney Grievance Comm'n v. Shephard*, 444 Md. 299, 335-36 (2015) (quoting *Attorney Grievance Comm'n v. Goodman,* 426 Md. 115, 128 (2012)).

Bar Counsel argues that the following findings of fact support a conclusion that Mr. Brooks violated Rule 8.4(d): (1) Mr. Brooks repeatedly failed to abide by the statutory provisions governing the administration of estates; (2) he used Estate funds to pay his

---

connection with the acts, omissions or transactions alleged in the Petition, has not committed any act of fraud in connection with the acts, omissions or transactions alleged in the Petition, and has not engaged in conduct involving fraud or misrepresentation."

attorney's fees without seeking or obtaining court approval; (3) he failed to advise the beneficiaries that if the Estate paid his fees, he was required to seek and obtain court approval; (4) he failed to timely provide the beneficiaries with an accounting of his time and fees; (5) he failed to deposit and maintain unearned attorney's fees in his attorney trust account; (6) he failed to deposit a cash payment to the Estate in the Estate account; and (7) he failed to maintain client matter records and client ledgers for his attorney trust account.

We agree with Bar Counsel. Given Mr. Brooks's violations of Rule 1.1, 1.3, 1.4, and 1.15 cumulatively, we conclude that he has brought disrepute to the legal profession and, therefore, has violated Rule 8.4(d). *See Attorney Grievance Comm'n v. Mitchell*, 445 Md. 241, 262 (2015) (where attorney failed to provide competent and diligent representation to his client, failed to expedite the litigation for which he was retained, and failed to keep the client informed regarding the status of the representation, the attorney's conduct violated Rule 8.4(d)); *Attorney Grievance Comm'n v. Thomas*, 440 Md. 523, 556 (2014) (attorney's violations of Rules 1.1, 1.3, and 1.4, based on attorney's failure to appear at a hearing and cessation of communications with the client, also violated Rule 8.4(d)); *Shepard*, 444 Md. at 336 (attorney's failure to deposit unearned attorney's fees into attorney trust account and to properly manage the trust account adversely affected the public's perception of the legal profession, violating Rule 8.4(d)).

*Maryland Rule 19-407 – Attorney Trust Account Record-Keeping*

Maryland Rule 19-407 provides, in pertinent part:

(a) Creation of Records. The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

…

(3) Client Matter Records. A record for each client matter in which the attorney receives funds in trust, as follows:

(A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of funds remaining in the account in connection with the matter; and

(B) an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client.

The hearing judge concluded that Mr. Brooks violated Maryland Rule 19-407(a)(3) by failing to maintain client matter records and client ledgers. Mr. Brooks stipulated to and admitted his failure to maintain client matter records and client ledgers at the evidentiary hearing and does not except to the hearing judge's conclusion on this point. We agree that Mr. Brooks violated Rule 19-407(a)(3).

C. **Aggravating and Mitigating Factors**

"Bar Counsel has the burden of proving the existence of aggravating factors by clear and convincing evidence." *Edwards*, 462 Md. at 708 (citation omitted). "The Respondent in an attorney disciplinary proceeding must prove the presence of mitigating circumstances by a preponderance of the evidence." *Id.* (citation omitted).

*Aggravating Factors*

We have enumerated the aggravating factors that, if found, are relevant to the appropriate sanction:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [Rules]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Sperling & Sperling*, 459 Md. 194, 275 (2018) (citation omitted).

The hearing judge found the existence of two aggravating factors: prior discipline and substantial experience in the practice of law. The Commission issued Mr. Brooks a reprimand on June 20, 2014, for violating Rule 1.15 (safekeeping of property) and former Maryland Rules 16-607 (commingling of funds) and 16-609 (improper use of and having a negative balance in attorney trust accounts). Thus, we agree that the aggravating factor of prior discipline is present.

Mr. Brooks has substantial experience in the practice of law. He was admitted to the Maryland Bar in 1992. Since 2004, he has been practicing law full time as a solo practitioner, with estates and trusts being one of his three primary areas of practice. Mr. Brooks does not except to the hearing judge's finding regarding this aggravating factor.

We agree that the aggravating factor of substantial experience in the practice of law is present.

Finally, although the hearing judge did not address the aggravating factor of multiple violations of the MARPC, it is clear that this factor applies here. *See Attorney Grievance Comm'n v. Mixter*, 441 Md. 416, 530 (2015).

*Mitigating Factors*

As noted above, we have previously listed relevant mitigating factors as including:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Hodes*, 441 Md. at 209 (citation omitted).

As explained above, we interpret the hearing judge's opinion as finding the presence of five mitigating factors: (1) absence of a dishonest or selfish motive; (2) timely good faith efforts to make restitution or to rectify consequences of misconduct; (3) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (4) character or reputation; and (5) remorse. Bar Counsel excepts only to the hearing judge's findings relating to the restitution Mr. Brooks paid to the Estate in September 2020 to remedy the improper payment of attorney's fees without leave of the Orphans' Court.

We agree with the hearing judge's findings concerning the mitigating factors of absence of a dishonest or selfish motive, full and free disclosure to disciplinary board or

cooperative attitude toward proceedings, good character or reputation, and remorse. However, we sustain Bar Counsel's exception to the mitigating factor of timely good-faith efforts to make restitution or to rectify the consequences of misconduct.

Citing the American Bar Association's 1992 *Standards for Imposing Lawyer Sanctions* ("ABA Standards"), we have repeatedly stated that a timely good faith effort to make restitution constitutes mitigation. *See, e.g.*, *Attorney Grievance Comm'n v. McDowell*, 439 Md. 26, 45-46 (2014). Bar Counsel argues the restitution here is not mitigating because it was not timely; that is, Mr. Brooks did not refund the attorney's fees for almost two years after making the improper withdrawals and almost seven months after Bar Counsel included allegations concerning the withdrawal of the Estate funds in the Petition for Disciplinary or Remedial Action. We agree with Bar Counsel.

As agreed by the parties and admitted at the evidentiary hearing, the undisputed facts show that Mr. Brooks improperly paid himself attorney fees of $800 on August 2, 2018 and $60 on October 1, 2018 without leave of the court and did not make restitution (including interest) until September 18, 2020, almost two years later. Mr. Brooks testified that he only learned of his errors and that the attorney's fees needed to be returned during a September 15, 2020 teleconference he had with Chief Judge Garrett of the Orphan's Court for Baltimore City, after Mr. Brooks had received Mr. Stelmack's expert opinion. Chief Judge Garrett explained to Mr. Brooks during that conversation that Mr. Brooks had erred by withdrawing the Estate funds to pay attorney's fees without first obtaining court approval.

Bar Counsel analogizes the facts and circumstances of this case to *Attorney Grievance Commission v. Miller*, 467 Md. at 225-26. In *Miller,* the attorney argued that she made timely good faith efforts to provide restitution because she apologized to the client numerous times and eventually refunded the client's money. We concluded that the refund did not constitute a timely good faith effort to make restitution because the refund "came long after [the attorney's] dispute with [the client] and after [the client] had filed her complaint with Bar Counsel." *Id*. at 225; *see also Attorney Grievance Comm'n v. Frank*, 470 Md. 699, 716, 730, 742-43 (2020) (more than a two-year delay between learning of error and making restitution, and making the payment only following a 13-month investigation, rendered the restitution neither timely nor made in good faith, and showed an indifference to making restitution).

We recognize that this case differs from *Miller* and *Frank* in some respects. For example, unlike Mr. Brooks, the attorney in *Miller* "generally failed to atone for her actions," blamed her client for the problems in the attorney-client relationship, and turned down an offer from the client's prior counsel to forego an investigation from Bar Counsel in exchange for returning the disputed $2,500. *Miller*, 467 Md. at 208. In contrast, Mr. Brooks provided restitution with remorse and never attempted to blame the beneficiaries or others for his misconduct. Moreover, Mr. Brooks took the initiative to speak with Chief Judge Garrett and, in essence, obtain a second opinion regarding Mr. Stelmack's conclusion that he should have petitioned the Orphans' Court before withdrawing the Estate funds to pay his attorney's fees. Thus, we do not believe that Mr. Brooks, like the attorney in *Frank*, showed an indifference to making restitution. However, Mr. Brooks's

41

seven-month delay in making restitution after receiving the Petition for Disciplinary or Remedial Action ultimately leads us to conclude that the restitution was not sufficiently timely to be mitigating.

In the Petition, which was filed on February 25, 2020, Bar Counsel alleged that Mr. Brooks's conduct in writing the two checks on the Estate account totaling $860 to pay for his attorney's fees was in violation of law. There was nothing stopping Mr. Brooks from discussing this matter with Chief Judge Garrett or a trusted colleague well before Mr. Brooks received Mr. Stelmack's expert opinion. Although Mr. Brooks handled the matter properly after receiving Mr. Stelmack's opinion – and we will consider the hearing judge's finding of remedial action under Maryland Rule 19-727(d)(2) when determining the proper sanction – we hold that Mr. Brooks's belated restitution does not constitute a mitigating circumstance. Accordingly, we sustain the exception of Bar Counsel on this point.

Mr. Brooks excepts to the hearing judge's failure to find as a mitigating factor the unlikelihood of future misconduct, stating that he has taken affirmative action to improve his practice and prevent future mistakes, including investment in technology for better management of his law office and attorney trust account and review of the law of trusts and estates administration. While such investments are encouraging, and we do not doubt Mr. Brooks's intention to improve his practice, we do not find that Mr. Brooks established the unlikelihood of future misconduct by a preponderance of the evidence.

**D. Sanction**

We now consider the appropriate sanction to impose on Mr. Brooks for his violations of Rules 1.1, 1.3, 1.4(a)(2) and (3), 1.15(a) and (c), 8.4(a) and (d), and Maryland Rule 19-407(a)(3). As we have previously stated:

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

> In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the [rules] that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

*Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 604 (2016) (citation omitted).

In deciding the appropriate sanction, "[w]e are guided by our interest in protecting the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Lewis*, 437 Md. 308, 329 (2014) (internal quotation marks and citation omitted). "As a result, our purpose in deciding the appropriate sanction is not to punish the lawyer, but to protect the public, and deter other lawyers from engaging in similar misconduct." *Edwards*, 462 Md. at 711 (internal quotation marks and citation omitted). "When determining the appropriate discipline, we consider the facts and circumstances of each case and order a sanction that is commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id*. at 712 (internal quotation marks and citation omitted).

43

Bar Counsel recommends as the sanction an indefinite suspension with the right to reapply after six months. In support, Bar Counsel argues that this Court has held that where an attorney improperly handles funds held in trust for others but there is no finding of intentional misappropriation, an indefinite suspension is the appropriate sanction. *See Attorney Grievance Comm'n v. DiCicco*, 369 Md. 662, 687 (2002); *see also Attorney Grievance Comm'n v. Tun*, 428 Md. 235, 246-47 (2012) (attorney indefinitely suspended with the right to reapply where the attorney's mishandling of funds was due to poor record-keeping rather than an intentional act). In *DiCicco*, the attorney was indefinitely suspended with the right to seek reinstatement after 90 days when he failed to safekeep funds intended for a third-party medical provider in his attorney trust account and was out of trust, in violation of Rule 1.15, but had no intent to defraud and did not cause financial harm to the client. *See DiCicco*, 369 Md. at 673-74, 688.

Bar Counsel also relies upon *Attorney Grievance Commission v. Kendrick*, in which the attorney, as co-personal representative of an estate, accepted $6,000 from the estate as commissions and/or attorney's fees without seeking or obtaining prior court approval under ET § 7-601 or ET § 7-602 or proper compliance with the requirements of ET § 7-604. 403 Md. 489, 508 (2008). The attorney's conduct violated Rules 1.1, 1.3, 1.5, and 1.15. *Id.* at 520. While concluding that the "misconduct was not due to greed or dishonesty, but rather obstinateness and incompetence in probate matters," this Court, taking into account the absence of dishonest motive and lack of prior discipline, ordered an indefinite suspension, with the right to reapply only after full restitution had been made to the estate. *Id.* at 522; *see also Thompson*, 376 at 520-22 (indefinitely suspending the attorney with the right to

44

reapply after one year for violating Rules 1.1, 1.15 and 8.4(d) when the attorney paid himself personal representative commissions prior to receiving court approval but did not have a fraudulent intent and cooperated with Bar Counsel's investigation). Given Mr. Brooks's prior disciplinary sanction for mishandling his attorney trust account and other violations committed in this case, Bar Counsel asserts that the case for an indefinite suspension is even stronger in this case than in *Kendrick*.

Mr. Brooks contends that a reprimand is the appropriate sanction. Mr. Brooks argues that the misconduct generally supporting an indefinite suspension, such as abandoning clients, acting out of greed, making misrepresentations, or causing harm to the client, does not exist here. In support, Mr. Brooks contends that the incompetence alleged in *Attorney Grievance Comm'n v. Queen*, 407 Md. 556 (2009), was substantially greater than in this case. In *Queen*, this Court reprimanded a lawyer who violated Rules 1.1, 1.3, and 8.1(b) by failing to oppose a dispositive motion, resulting in the dismissal of his client's case, and by failing to timely file an appellate brief. *Id*. at 560-66, 570-72. In determining that a reprimand was the appropriate sanction, this Court concluded that we could "protect the public and deter other lawyers from violating the Rules of Professional Conduct without disrupting Respondent's practice of law." *Id.* at 570-72 (citing *Attorney Grievance Comm'n v. Mahone*, 398 Md. 257, 269-70 (2007); *Attorney Grievance Comm'n v. Taylor*, 405 Md. 697, 721 (2008); *Attorney Grievance Comm'n v. Sapero*, 400 Md. 461, 490-91 (2007)); *see also Attorney Grievance Comm'n v. Lee*, 390 Md. 517, 527 (2006) (explaining that a reprimand would serve the purpose of protecting the public and "serves as notice to the respondent and other attorneys that this Court considers [the attorney's Rules violations]

serious matters"); *Attorney Grievance Comm'n v. Tolar*, 357 Md. 569, 585 (2000) (noting that a reprimand serves the purpose of protecting the public similar to that of a short suspension).

Mr. Brooks also directs our attention to other cases in which this Court issued a reprimand where the attorney committed errors involving incompetence and mishandling of an attorney trust account or prior discipline. *See, e.g.*, *Attorney Grievance Comm'n v. Weiers*, 440 Md. 292, 309, 311-12 (2014) (attorney violated then Rule 16-607, now Rule 19-408 (commingling of funds), Rule 1.15(a), and Rule 8.1(b) (failure to cooperate with Bar Counsel), but received a reprimand because of mitigating circumstances that there was no injury to his client, the attorney had no prior attorney discipline, the attorney did not have a dishonest or selfish motive, and the attorney ultimately responded to Bar Counsel and participated in the disciplinary proceeding); *Attorney Grievance Comm'n v. Shoup*, 410 Md. 462, 506 (2009) (attorney violated former Rule 16-609 due to unintentional clerical errors); *see also Tolar*, 357 Md. at 581-82, 585 (attorney's violation of Rules 1.3, 1.4, and 8.1(b), even with two private reprimands as prior discipline, warranted "a reprimand rather than a suspension… It will serve the purpose of protecting the public just as well as a short suspension[.]").

We agree with Mr. Brooks that a reprimand is the appropriate sanction under the facts and circumstances of this case. While ordinarily a suspension in some form would be the sanction in a case like this, we believe that the mitigating factors in this case warrant the lesser sanction of a reprimand. While Mr. Brooks's handling of the Estate involved a number of errors, he did not act with a dishonest or selfish motive. In addition, he expressed

significant remorse for his errors. Throughout Bar Counsel's investigation, Mr. Brooks was fully cooperative and did not impede the investigation in any way.

Moreover, Mr. Brooks's contributions to the community through his pro bono legal service and his other volunteer efforts have been exceptional. The hearing judge found that Mr. Brooks possesses an "exceptionally good reputation in the legal community and in the community at large." Chief Judge Garrett, retired Chief Judge Wanda Keyes Heard of the Circuit Court for Baltimore City, UMBC President Dr. Freeman Hrabowski, and fellow attorneys and other community leaders all attested to Mr. Brooks's excellent character and outstanding service, work, and efforts in support of the Baltimore City and Baltimore County communities.

Although Mr. Brooks's restitution to the Estate was not sufficiently timely to qualify as an independent mitigating factor, this remedial measure also sheds light on his character. If Mr. Brooks were a dishonest or selfish person, we doubt that he would have consulted Chief Judge Garrett for a second opinion after receiving Mr. Stelmack's expert opinion. Immediately upon receiving Chief Judge Garrett's opinion, Mr. Brooks refunded the $860 to the Estate with interest. Indeed, as noted above, Mr. Brooks apparently overpaid the Estate in the refund by double-counting his second $60 withdrawal of Estate funds and paying interest on that $60 twice. This seems to be another example of carelessness on Mr. Brooks's part. In this instance, Mr. Brooks's carelessness resulted in a small financial loss to himself. This reinforces our impression that Mr. Brooks approaches his professional obligations in good faith but needs to do so with greater care and attention to detail.

For the reasons discussed above, we determine this case falls within the ambit of cases such as *Taylor*, *Sapero*, *Tolar*, *Weiers*, *Mahone,* and *Queen*. We conclude that a reprimand will protect the public and deter other attorneys without preventing Mr. Brooks from continuing to serve the public and his community as an attorney.

## IV

## Conclusion

For the reasons discussed above, we conclude that a reprimand is the appropriate sanction for Gary Morgan Brooks for his violations of MARPC 1.1, 1.3, 1.4(a)(2) and (3), 1.15(a) and (c), 8.4(a) and (d), and Maryland Rule 19-407(a)(3).

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GARY MORGAN BROOKS.**